Herbert **CARROLL,** Plaintiff-Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,** Defendant-Appellee.

No. 715, Docket 81–6253.

United States Court of Appeals, Second Circuit.

Argued March 14, 1983.

Decided April 11, 1983.

Maryellen Goble, New York City, for plaintiff-appellant.

Denny Chin, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., S.D. N.Y., Thomas D. Warren, Asst. U.S. Atty., New York City, of counsel), for defendant-appellee.

Before MANSFIELD, MESKILL and NEWMAN, Circuit Judges.

MANSFIELD, Circuit Judge:

Herbert Carroll appeals from an order and judgment of the Southern District of New York entered by Judge John M. Cannella dismissing his complaint under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), alleging that the Secretary of Health and Human Services ("HHS") improperly denied him social security disability insurance benefits. The district court upheld the Secretary's denial as supported by substantial evidence. The Secretary found that Carroll's impairments were not of such severity as to render him disabled within the meaning of the Act, concluding that he was capable of performing "sedentary" work. The Secretary has moved for a stay of the appeal pending a decision by the Supreme Court in *Campbell v. Secretary of Health & Human Services*, 665 F.2d 48 (2d Cir.1981), *cert. granted*, 457 U.S. 1131, 102 S.Ct. 2956, 73 L.Ed.2d 1348

(1982).[1]  We reverse and remand for calculation of benefits.

In April 1979 Carroll, then 43 years old with a 20-year work history, applied to the Secretary for disability benefits based on physical impairments (arthritis, pains in arms, back, knees and shoulders).  For 11½ years he had worked as a security guard, which required him to patrol the buildings to which he was assigned in order to protect persons and property, to issue summonses or arrest persons violating laws on the premises, to answer inquiries, to assist persons in the buildings, and to provide aid in the event of an accident.  This job required him to be on his feet all day and involved extensive walking.  Prior to working as a security guard he had completed schooling through the ninth grade, served three years in the Army, and had been employed for nine years as a piece goods man at a textile firm, which required lifting of heavy bolts of fabric, cutting fabrics to size, and packing.

In January 1978 Carroll stopped working after he was injured on the job as the result of an attack by a man armed with an icepick.  Thereafter he suffered daily, recurrent pains in his legs, arms, back, and shoulders.  Because of the pain he experienced difficulty in standing, lifting, sitting, and climbing stairs.  He cannot walk for more than a few blocks, and can use public transportation for only limited periods of time before experiencing pain and dizziness.

Medical examination of Carroll by four doctors in connection with his application to the Workers' Compensation Board for disability benefits revealed that he suffers from severe arthritis, crepitus (grating of joint) in both knees, limited flexion of the lumbosacral spine, tenderness of the dorsal and lumbar spine, and high blood pressure, the latter controlled somewhat by medication.  The doctors who examined Carroll

found him to be partially disabled.  The Board, after conducting a hearing on December 11, 1979, confirmed these findings in a report dated August 7, 1980, and concluded that he was entitled to Workers' Compensation benefits.

The physician who treated Carroll most frequently and over the longest period of time (once every three or four weeks, beginning in February 1979) was Dr. Howard Hertzberg, an orthopedic surgeon.  In confirming the foregoing findings he testified as follows before the Workers' Compensation Board regarding Carroll's ability to function:

"Q.  Doctor, what's your prognosis in this case?

A.  Prognosis would be very guarded.

Q.  Do you think the man will ever be able to go back to work?

A.  I don't know if he'll ever be able to. It depends on the type of work we're talking about.

Q.  He's a security guard, Doctor.

A.  I would doubt it.

Q.  Doctor, what restrictions would you place on his work activity?

A.  *He'd have a limited ability to* stand for any period of time or to *sit for any period of time.*  He'd have a limited ability to lift, limited ability to bend.

Q.  Doctor, how does a person with these restrictions manage to survive?  Do they sit for five minutes, stand for five, walk for five and then sit again for five and alternate?

A.  I don't follow the question.

Q.  Well, Doctor, you say he can *only sit for short periods of time; he can only walk for short periods of time; he can only stand for short periods*

1.  In *Campbell* we held that when an applicant for disability benefits is prevented by physical impairments from returning to her job the Secretary may not show that she is capable of alternative gainful work solely by resort to medical-vocational "charts" or guidelines but must specify particular types of jobs for which the claimant is eligible so that the claimant will then have an opportunity to present evidence to the effect that she cannot in fact perform the types of jobs specified.  In the present case the Secretary used these charts after Carroll established his inability to return to his former job as a security guard.

*of time.* Is that to be his routine for the rest of his life, to alternate these things.

A. To some extent, yes.

. . . .

A. I would evaluate [Carroll] as having a permanent partial disability . . . [b]ecause of his persistent restrictions involving the back and the lower extremities and the persistent complaints of pain and limitation [of movement]." (A. 113–14, 117, emphasis added).

After Carroll's application to the Secretary for Social Security disability benefits was initially denied, a *de novo* disability hearing, at which Carroll was unrepresented, was held on December 21, 1979 before an Administrative Law Judge. At this hearing Carroll testified and the ALJ received in evidence the medical testimony and records that had been introduced before the Workers' Compensation Board. In a decision dated January 31, 1980, the ALJ concluded that Carroll was not entitled to disability insurance benefits under the Act. The ALJ substantially confirmed the foregoing medical diagnoses and found that Carroll could not "perform his former job as security guard due to resultant difficulty in standing, walking, lifting, and bending." (A. 26). However, he further found that the "medical evidence does not support claimant's allegation that his pain is of such severity that it precludes him from engaging in substantial gainful activity," that he (Carroll) "has the residual functional capacity to perform work-related functions except for work involving prolonged walking and standing, or frequent bending and lifting," and that he "has the residual function-

al capacity for at least sedentary work." [2] (A. 27). Accordingly the ALJ held that Carroll was not entitled to benefits under the Act. No medical evidence had been received as to Carroll's ability to perform "sedentary" functions other than the foregoing testimony of Dr. Hertzberg that he would have only limited ability to sit for any period of time. On March 10, 1980, the Appeals Council of the Social Security Administration denied Carroll's request for review.

On April 30, 1980, Carroll, now represented by counsel, commenced the present action seeking judicial review and reversal of the ALJ's decision on the grounds that it was contrary to law and unsupported by substantial evidence. On November 24, 1980, Carroll filed an amended complaint, to which was appended some new evidence with respect to his condition, including the report of the Workers' Compensation Board and a progress report to that Board by Dr. Robert S. Goldstein. The Secretary answered, filing a copy of the administrative record. Carroll and the Secretary each then moved for judgment on the pleadings, resulting in Judge Cannella's decision dated March 25, 1981, from which Carroll appeals.

## DISCUSSION

The standards governing entitlement to Social Security disability benefits are well settled. A person is "disabled" within the meaning of the Act, entitling him to benefits, if he is unable

"to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

---

**2.** "Sedentary work" is defined by 20 C.F.R. § 404.1567 as follows:

"(a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

The obvious requirement that the claimant have the capacity to sit for long periods of time is recognized by 20 C.F.R. § 1567(b) which defines "light work" in pertinent part as follows:

"(b) *Light work.* . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A).

If the claimant can perform gainful work existing in the national economy, it is immaterial for purposes of the Act that such work may not exist in the immediate area where he lives or that a specific job vacancy may not exist. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled the Secretary must consider (1) objective medical facts and clinical findings, (2) diagnoses and medical opinions of examining physicians, (3) the claimant's subjective evidence of pain and physical incapacity as testified to by himself and others who observed him, and (4) the claimant's age, educational background, and work history. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980); *Marcus v. Califano*, 615 F.2d 23, 26 n. 2 (2d Cir.1979); *Gold v. Secretary of Health, Education & Welfare*, 463 F.2d 38, 41 n. 2 (2d Cir.1972). The opinion of a treating physician is entitled to considerable weight, *Parker v. Harris, supra*, 626 F.2d at 231; *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir.1980), and in the absence of contradictory evidence is binding on the Secretary. *Singletary v. Secretary of Health, Education and Welfare*, 623 F.2d 217, 219 (2d Cir.1980); *Eiden v. Secretary of Health, Education and Welfare*, 616 F.2d 63, 64 (2d Cir.1980); *Alvarado v. Califano*, 605 F.2d 34, 35 (2d Cir.1979); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978).

The burden is on the claimant to prove that he is disabled within the meaning of the Act. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1520 (1982); *Decker v. Harris*, 647 F.2d 291, 293 (2d Cir.1981). However, if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the Secretary to show there is other gainful work in the national economy which the claimant could perform. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982); *Campbell v. Secretary of Health and Human Services*, 665 F.2d 48, 51 (2d Cir.1981), *cert. granted*, — U.S. —, 102 S.Ct. 2956, 73 L.Ed.2d

1348 (1982); *Parker v. Harris, supra*, 626 F.2d at 231. More specifically,

"First, the Secretary must show that the claimant's impairment is of a kind that still permits certain types of activity, such as lifting or walking, necessary for other occupations, and that the claimant's experience involves skills transferable to other work. Second, the Secretary must present evidence showing the existence of specific types of jobs, available in the national economy, suitable for a claimant with these capabilities and skills." *Decker v. Harris, supra*, 647 F.2d at 294.

The scope of judicial review of the Secretary's factual determinations and his application of legal principles to the facts has likewise been fairly well defined. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ...." 42 U.S.C. 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Parker v. Harris, supra*, 626 F.2d at 231. It is the function of the Secretary, not ourselves, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant. *Richardson v. Perales, supra*, 402 U.S. at 399, 91 S.Ct. at 1426; *McLaughlin v. Secretary of Health, Education & Welfare*, 612 F.2d 701, 705 (2d Cir.1980); *Marcus v. Califano, supra*, 615 F.2d at 27.

In the present case, the ALJ found that because of pain and physical impairments Carroll is "unable to perform his past relevant work as security guard." This finding, supported by overwhelming evidence, confirmed that Carroll had satisfied his initial burden of showing that he is disabled and shifted to the Secretary the burden of showing that his impairment does not prevent him from performing other substantially gainful work that exists within the national economy. The Secretary offered no evidence on this issue, being content to rest on the administrative record, which consisted mainly of the medical testimony and records before the Workers' Compensation Board and Carroll's testimony.

The ALJ found that this medical evidence does not support Carroll's claim that his pain is of such severity as to preclude him from engaging in substantial gainful activity and that he has "the residual functional capacity for at least sedentary work as defined in Regulation 404.1510," precluding him from entitlement to disability benefits under the Act. This finding is not supported by substantial record evidence. The Secretary, who had the burden on this issue, failed to introduce any medical or other evidence, such as the testimony of a vocational expert or a consulting physician, that Carroll could hold a sedentary job. By its very nature "sedentary" work requires a person to sit for long periods of time even though standing and walking are occasionally required. 20 C.F.R. § 404.1567(a), (b) (1982). Three of the four doctors who examined Carroll (Drs. Waltier, Bernard and Goldstein) were never asked what work or activity, such as sedentary employment, Carroll *could* perform and hence expressed no opinion on that subject. However, Dr. Howard Hertzberg, the treating physician who examined Carroll many times over a period of more than a year, expressed the opinion that Carroll had a limited ability to stand for any period of time, to sit for any period, to lift or to bend, and that he could sit, walk or stand for only "short periods."

Nor has the Secretary sustained his burden on the basis of (1) Carroll's testimony that he sometimes reads, watches television, listens to the radio, rides buses and subways, and (2) the ALJ's notation that Carroll "sat still for the duration of the hearing and was in no evident pain or distress." There was no proof that Carroll engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job. On the contrary, as far as the record is concerned he did these things only for short periods. Moreover he testified to various types of pain and limitations of movement that would have precluded his being capable of sedentary employment. His testimony regarding pain was also corroborated to some extent by the doctors who examined him, none of whom indicated any doubts about his credibility. Although the ALJ was not required to credit Carroll's testimony, he would normally be expected to note his rejection of it in whole or part. Yet he failed to indicate any such disbelief, resting his finding of capability of sedentary work on "the medical evidence." The ALJ's observation that Carroll sat through the hearing without apparent pain, being that of a lay person, is entitled to but limited weight, see *Freeman v. Schweiker,* 681 F.2d 727, 731 (11th Cir.1982), and since only a 40-minute period was involved it is not inconsistent with the medical evidence and Carroll's own testimony.

We therefore conclude that the Secretary has failed to sustain his burden and that the ALJ's finding that Carroll can engage in sedentary work is not supported by substantial evidence. The judgment dismissing Carroll's complaint must therefore be reversed. There remains the question of whether we should direct that the case be (1) remanded for reconsideration by the Secretary upon the existing record or upon a record to be amplified or (2) remanded for calculation of benefits. This issue requires us to consider Congress' June 9, 1980 amendment of 42 U.S.C. § 405(g), P.L. 96–265, § 307, 94 Stat. 458, which limits our remand power. Prior to the amendment, the section provided in pertinent part:

> "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.... The court shall, on motion of the Secretary made before he files his answer, remand the case to the Secretary for further action by the Secretary, and may, at any time, on good cause shown, order additional evidence to be taken before the Secretary...."

In 1980 Congress modified the section to substitute the following in lieu of the second sentence quoted above:

> "The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order

additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; ...."

"As we have recently noted, the amendment 'was at least in part designed to limit federal court remands to the Secretary,'" *Carter v. Schweiker,* 649 F.2d 937, 942 (2d Cir.1981) (quoting *Aubeuf v. Schweiker,* 649 F.2d 107, 115 (2d Cir.1981)). See also S.Rep. No. 96–408, 96th Cong., 2d Sess. 58 (1979), *reprinted in* [1980] U.S.Code Cong. & Ad. News 1277, 1336. Although the amendment became effective after the close of administrative proceedings in the present case, we must, in the absence of a contrary Congressional directive or of evidence that retroactive application would be manifestly unjust, treat the amendment as applicable. *Ward v. Schweiker,* 686 F.2d 762, 764 (9th Cir.1982); *Chaney v. Schweiker,* 659 F.2d 676, 678 (5th Cir.1981); see *Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *Berry v. Schweiker, supra,* 675 F.2d at 467 n. 1.

The amendment does not preclude remand when the Secretary has misapplied the law or failed to provide a fair hearing, see, e.g., *Carter v. Schweiker, supra,* 649 F.2d at 942; *Aubeuf v. Schweiker, supra,* 649 F.2d at 116. However, when, as here, the reversal is based solely on the Secretary's failure to sustain his burden of adducing evidence of the claimant's capability of gainful employment and the Secretary's finding that the claimant can engage in "sedentary" work is not supported by substantial evidence, no purpose would be served by our remanding the case for rehearing unless the Secretary could offer additional evidence. The Secretary has not yet requested such a remand, and it appears unlikely that the Secretary could show good cause "for failure to incorporate such [additional] evidence into the record in [the] prior proceeding." 42 U.S.C. § 405(g). Nothing appears to have prevented the ALJ in the present case from calling as live witnesses the four doctors who gave evidence

before the Workers' Compensation Board and inquiring further into Carroll's capability of employment or from offering other evidence, such as the testimony of vocational experts. See 42 U.S.C. § 405(d) (ALJ's subpoena power); 20 C.F.R. § 404.950(d) (same). Moreover, absent a showing by the Secretary of good cause for a remand, the present case would be an appropriate one in which to carry out Congress' mandate to foreshorten the often painfully slow process by which disability determinations are made. It has now been four years since Carroll applied to HHS for disability benefits. A remand, potentially followed by another appeal, could well delay the payment of benefits to which Carroll appears to be entitled for still further years. However, on the record before us we cannot now determine whether the Secretary would ask to reopen the record for the purpose of introducing additional evidence and, if so, whether he would be able to meet the requirements of § 405(g), i.e. (1) that the evidence be (a) new and (b) material, and (2) that good cause be shown for his failure to produce the evidence in earlier proceedings. See *Carter v. Schweiker, supra,* 649 F.2d at 942–43. Should the Secretary move for a remand to present new evidence, the application of these standards would present "primarily factual issues [which] must be determined by the district court in the first instance." *Id.* at 943.

Accordingly, we reverse the order and judgment of the district court with directions to remand the case to the Secretary for the calculation of benefits, subject to the district court's disposition according to the foregoing standards fixed by § 405(g) of any motion by the Secretary for a remand to the ALJ for the consideration of additional evidence, provided the motion is made promptly upon our remand of the case to the district court.

The Secretary's request that this appeal be stayed pending the Supreme Court's decision in *Campbell v. Secretary of Health and Human Services, supra,* is denied. Regardless how *Campbell* is decided, this case must be reversed and remanded for the reasons indicated.