**Patrick BALSAMO, Plaintiff–Appellant,**

**v.**

**Shirley S. CHATER, Commissioner of Social Security, Defendant–Appellee.**

**Docket No. 96–6322.**

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1997.

Decided March 6, 1998.

Steven S. Landis (Beth G. Arnold, on the brief), Binder and Binder, Hauppauge, NY, for Plaintiff–Appellant.

Michael J. Goldberger, Assistant United States Attorney (Zachary W. Carter, United States Attorney, Deborah B. Zwany and Bruce H. Nims, Assistant United States Attorneys for the Eastern District of New York, Brooklyn, NY, on the brief), for Defendant–Appellee.

Before: CARDAMONE, WALKER, and JACOBS, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff-appellant Patrick Balsamo ("Balsamo") appeals from the October 25, 1996 judgment of the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *District Judge*) granting, pursuant to Fed.R.Civ.P. 12(c), a motion for judgment on the pleadings to defendant Shirley S. Chater, Commissioner of Social Security ("Commissioner"), and finding substantial evidence to affirm the decision of the administrative law judge ("ALJ")(Jonathan Jacobs, *Judge*) dismissing Balsamo's claim for social security benefits.

Vacated and remanded.

*Background*

Balsamo suffered a number of unfortunate injuries during his tenure from 1985 to 1993 as a police officer with the New York City Police Department ("NYPD"). On April 29, 1988, Balsamo was involved in a car collision that resulted, according to a medical report by orthopedist Dr. Martin Weseley, in injuries to Balsamo's neck, left hand, left knee, and lower back. Following medical treatment and an arthroscopic procedure, Balsamo was declared by Dr. Weseley to be in "good condition" and by early 1989 he returned to full duty at the NYPD. On June 2, 1990, Balsamo was involved in a second, work-related car accident involving a suspect, after which Balsamo was diagnosed by Dr. Ernesto Lee, M.D. ("Dr. Lee"), an orthopedic surgeon, with back and left knee injuries including "chondromalacia of the medial femoral condyle and ... deformity of the lateral meniscus." In September 1990, Dr. Lee performed a second arthroscopic procedure on Balsamo and provided further treatment including exercises, therapy, and pain relief medication. After this second accident, pursuant to Dr. Lee's recommendation, Balsamo worked on restricted duty at the NYPD. In February 1991, Dr. Lee reported Balsamo as having a "lateral meniscus tear" of the left knee and "left sciatic root disease." In a follow-up medical report in May 1991, Dr. Lee observed "gradual improvement" but diagnosed Balsamo's condition as "permanent and chronic."

On July 19, 1991, while attempting to get away from a suspect, Balsamo suffered a third, work-related injury, diagnosed by Dr. Lee in August 1991 as a lateral meniscus tear of the left knee. Dr. Lee stated that Balsamo would be "totally disabled" for three weeks. Balsamo nevertheless eventually returned to restricted duty at the NYPD. Balsamo suffered a fourth, work-related injury on January 4, 1992 in an accident while in his patrol car, after which Dr. Lee diagnosed him with sprains of both knees and the right hand. For some months afterward, Balsamo continued to complain of left knee pain, which led Dr. Lee to perform an MRI and a third arthroscopic procedure on Balsamo in May 1992. After the procedure, Dr. Lee found "[n]o significant chondromalacia" in Balsamo's left knee. Between January 1992 and March 1993, despite complaining of severe pain, Balsamo for the most part continued his restricted duty work for the NYPD, missing a total of approximately two months of work. According to Balsamo, he had difficulties sitting and walking during this time and did not change his police uniform at work because that would have required going down steps. On March 31, 1993, Balsamo finally retired from the NYPD, after which he began to receive a police pension. Balsamo has since lived at home with his wife and four children.

On October 21, 1993, Balsamo filed an application for social security disability insurance benefits, alleging that he became disabled on March 31, 1993. Following the denial of his application—initially on January 18, 1994 and on reconsideration on April 21,

1994—Balsamo requested and received an administrative hearing before an ALJ.

*Medical Evidence*

The following medical evidence was presented to the ALJ and cited in the ALJ's opinion. In a November 1994 medical report, Balsamo's treating physician Dr. Lee concluded that Balsamo could "walk ... half a block, stand fifteen minutes, sit fifteen minutes, bend one or two times per 8 hour period," and perform "limited" grasping and manipulation. In a residual functional capacity form completed one week later, Dr. Lee noted that Balsamo could sit for one hour and stand/walk for one hour per eight-hour day, occasionally lift and carry up to ten pounds, occasionally climb steps, and never reach or bend.

Balsamo received treatment from two other physicians. In August 1994, Dr. S.K. Pal, M.D. ("Dr. Pal"), an internist, wrote that "[Balsamo] is under my care suffering from severe left knee pain, back pain and sciatica.... Movement of left knee and back is severely restricted. He is permanently disabled." In September 1994, Dr. Pal also completed a residual functional capacity form, concluding that Balsamo could sit for two hours and stand/walk from zero to one hour per eight-hour day, occasionally lift up to ten pounds and carry up to five pounds, and occasionally bend, climb steps, and reach. In October 1994, Dr. Pal prepared another medical report, stating that Balsamo visited him "about once a month" for some period following his original injuries in 1988, describing Balsamo's injuries as including a "[l]ateral [m]eniscual [sic] tear, [l]igament damage, lateral displacement of left patella, [and] secondary sciatic back pain," and concluding that "[p]rognosis is bad and [Balsamo] will not recover any time."

From 1989 to 1994 Balsamo also received treatment for his back and knee injuries from Dr. John Acquavella, M.D. ("Dr. Acquavella"), described by both parties on appeal as a "chiropractor" and by the ALJ as a "physician." In December 1993, Dr. Acquavella prepared a medical report stating that Balsamo could lift up to ten pounds occasionally, stand/walk for less than two hours per day, and sit without limitation. In October 1994, however, Dr. Acquavella completed another functional assessment of Balsamo, concluding that he could lift and carry up to five pounds occasionally, sit for only two hours and stand/walk from zero to one hour per eight-hour day, and occasionally bend, climb steps, and reach.

For her part, the Commissioner offered into evidence an April 1994 medical report by its orthopedic consultant, Dr. Roger Antoine, M.D. ("Dr. Antoine"), who was not one of Balsamo's treating doctors. Dr. Antoine confirmed many of the findings of Balsamo's treating doctors, for example, that Balsamo had a "history of ligamentous and meniscal tear" to the left knee and injuries to his spine and right hand. Dr. Antoine's report also noted that Balsamo could sit for up to 20–30 minutes, stand for up to 25–30 minutes, walk two to three blocks, and lift up to twenty pounds. The report is unclear, however, as to whether Balsamo could sit and stand/walk for repeated periods of this duration, for one period of this duration, or for smaller repeated periods totaling a period of this duration within an eight-hour day.

*Balsamo's Testimony*

At the hearing on December 20, 1994, Balsamo testified that, as a result of his knee injuries, he could walk only one block at a time, stand for at most fifteen to twenty minutes at a time, sit for at most twenty minutes at a time, and lift approximately ten pounds. He stated that he took Tylenol with codeine and Vicodin to relieve his knee pain. Balsamo also asserted that, since March 31, 1993, he had performed no household chores—including preparing meals, doing the dishes, cleaning the house, and mowing his lawn; he had taken no vacation trips, belonged to no club or organization where he would have to travel to meetings, and had performed no volunteer work. Though Balsamo would "periodically" attend church services and "[o]n an occasion" go shopping with his wife, he spent most of his time "[l]ooking at TV, reading the paper or [a] book."

*The ALJ Decision*

In his January 24, 1995 decision, the ALJ held that Balsamo was not disabled within 42 U.S.C. § 423 of the Social Security Act and

denied Balsamo's benefits application. Although finding that Balsamo's medical condition "preclude[d] him from returning to his past work activity," the ALJ concluded that Balsamo "retain[ed] the residual functional capacity for sedentary work." The ALJ rejected the medical conclusions of Drs. Lee and Pal and the October 1994 conclusion of Dr. Acquavella as to Balsamo's capacity to perform sedentary work, on the basis that "[m]ost of [Balsamo's] treating physicians, since his alleged onset date, report no significant clinical findings to support their opinion that [Balsamo] is totally disabled and unable to work." The ALJ stated, for example, that "[t]he preponderant evidence establishes that there is no atrophy of any muscle groups indicative of disuse for the purpose of avoiding discomfort and as one would expect here in this case based on [Balsamo's] allegation of constant and totally disabling pain."

The ALJ did not cite the report of the Commissioner's own orthopedic consultant, Dr. Antoine, as evidence for its conclusion. Perhaps this was because Dr. Antoine's report further supported Balsamo's claimed inability to perform residual functions. The ALJ also rejected Balsamo's "complaint of totally disabling pain [as] not . . . credible to the extent alleged." The ALJ did note, however, that Balsamo was "not homebound" because he "own[ed] and operate[d] a motor vehicle when required" and because he "continue[d] to carry a gun." The ALJ also observed that Balsamo's weight—290 pounds in October 1993, 312 pounds in April 1994—was "undoubtedly a contributing factor to [Balsamo's] overall level of discomfort and further complicate[d] his complaint of back and left knee pain."

### Post–ALJ Proceedings

Following the ALJ's denial of benefits, Balsamo visited Dr. Leonard A. Pace, M.D. ("Dr. Pace"), a specialist in neuro-rehabilitation medicine, who concluded in a March 1995 report that Balsamo "remain[ed] with chronic pains and remain[ed] permanently disabled" with a number of medical injuries to the left knee and back. On November 3, 1995, the Appeals Council for the Social Security Administration considered Dr. Pace's report but denied Balsamo's request for a

review of the ALJ's decision. Balsamo sought judicial review, pursuant to 42 U.S.C. § 405(g), and on October 25, 1996 the district court entered judgment, pursuant to Fed. R.Civ.P. 12(c), affirming the ALJ's decision and holding that it was supported by substantial evidence. This appeal followed.

### Discussion

### I. The Statutory Scheme

■ We set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence. *See Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir. 1982) (per curiam).

To be eligible for disability benefits under 42 U.S.C. § 423, Balsamo must establish his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months" and the impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).

■ We restate the familiar five-step procedure set out in the Commissioner's regulations for evaluating disability claims under this section. *See Diaz v. Shalala,* 59 F.3d 307, 311 n. 2 (2d Cir.1995); *Berry,* 675 F.2d at 467; 20 C.F.R. §§ 404.1520, 416.920 (1997). First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where (as is undisputedly the case here) the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to do basic work activities. The ALJ found and it is undisputed that Balsamo had "severe low back pain syndrome and internal derangement of the left knee," which qualifies as a severe impairment. Where the claimant does suffer a severe impairment, the third inquiry is whether, based solely on medical evidence, he has an impairment listed in Appendix 1 of

the regulations or equal to an impairment listed there. The ALJ found that Balsamo had no such listed impairment and such is not claimed by Balsamo. If a claimant has a listed impairment, the Commissioner considers him disabled. Where a claimant does not have a listed impairment, the fourth inquiry is whether, despite his severe impairment, the claimant has the residual functional capacity to perform his past work. The ALJ found and the Commissioner does not contest that Balsamo was "unable to perform his past relevant work as warehousemen [sic] and police officer." Finally, where the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform. Although

> [t]he burden is on the claimant to prove that he is disabled within the meaning of the [Social Security] Act ... if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform.

*Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983) (citations omitted); *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."); *Berry*, 675 F.2d at 467 ("[T]he claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.").

In a finding vigorously contested by Balsamo, the ALJ determined that the Commissioner sustained its burden of establishing that Balsamo had "the residual functional capacity to perform the full range of sedentary work," which as defined by the regulations requires occasional walking and standing, modest prescribed lifting capability, and the capacity to sit for long periods of time. *See* 20 C.F.R. §§ 404.1567(a), (b); *Carroll*, 705 F.2d at 641 n. 2.

## II. *Balsamo's Ability to Perform "Sedentary Work"*

■ We believe that the ALJ's finding that Balsamo had "the residual functional capacity to perform the full range of sedentary work" is not supported by substantial record evidence. The Commissioner, who has the burden on the issue, failed to introduce any medical evidence that Carroll could hold a sedentary job. To the contrary, Balsamo's treating physicians concluded that Balsamo could not sit for long periods of time and therefore could not perform "sedentary work," as defined by 20 C.F.R. § 404.1567. Dr. Lee, the orthopedic surgeon who performed two of Balsamo's three arthroscopies and who first treated Balsamo in June 1990, concluded in a November 1994 residual functional capacity form that Balsamo could sit for only one hour and stand/walk for one hour per eight-hour day. Dr. Pal, the internist who examined Balsamo periodically between December 1988 and October 1994, concluded in a September 1994 residual functional capacity form that Balsamo could sit for only two hours and stand/walk from zero to one hour per eight-hour day. Dr. Acquavella, who treated Balsamo periodically from 1989 to 1994, concluded in his final October 1994 report that Balsamo could stand/walk from zero to one hour and sit for only two hours per eight-hour day.

■ The ALJ erred in rejecting the opinions of these physicians solely on the basis that the opinions allegedly conflicted with the physicians' own clinical findings. Under 20 C.F.R. § 404.1527(d)(2) (" § 404.1527(d)(2)"), the medical conclusion of a "treating" physician is "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." The ALJ did not give controlling weight to the opinions of Drs. Lee, Pal and Acquavella, citing their alleged infrequency of treatment and alleged failure to "report ... significant clinical findings to support their opinion that the claimant is totally disabled and unable to work."[1] The

---

1. Although chiropractors are not "treating physi- cians" within § 404.1527(d)(2), *see Diaz*, 59 F.3d

ALJ therefore apparently rejected Balsamo's treating physicians' opinions as non-controlling under § 404.1527(d)(2) because they were not "well-supported by medically acceptable clinical and laboratory diagnostic techniques."

■ We need not address whether the treating physicians' opinions bound the ALJ under § 404.1527(d)(2) because in this case the Commissioner failed to offer and the ALJ did not cite *any* medical opinion to dispute the treating physicians' conclusions that Balsamo could not perform sedentary work. In the absence of a medical opinion to support the ALJ's finding as to Balsamo's ability to perform sedentary work, it is well-settled that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.... [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) (internal quotation marks and citations omitted); *see also Filocomo v. Chater*, 944 F.Supp. 165, 170 (E.D.N.Y.1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.").

Here, for example, the ALJ stated without citing to any medical opinion that "there is no atrophy of any muscle groups indicative of disuse for the purpose of avoiding discomfort [ ] as one would expect ... based on the claimant's allegation of constant and totally disabling pain." In so finding, the ALJ plainly did not "choose between properly submitted medical opinions," but rather improperly "set his own expertise against that of [ ] physician[s]" who submitted opinions to him.

III. *Non–Medical Evidence*

■ Aside from Balsamo's physicians' own clinical findings, the ALJ cited other

non-substantial evidence to support his conclusion that Balsamo could perform sedentary work. The ALJ noted that Balsamo "continues to carry a gun," a fact itself irrelevant (in the absence, at minimum, of evidence that he used the gun at a firing range or elsewhere) to establish Balsamo's ability to perform sedentary work. On appeal, the Commissioner contends that Balsamo "did a lot of reading and watching television, activities which are generally indicative of an ability to sit." Commissioner Br. at 37. We take judicial notice that individuals can read and watch television while lying down and find that these facts do not materially advance the Commissioner's conclusion that Balsamo is able to perform sedentary work.

■ Finally, although Balsamo testified that he rarely left his house—"periodically" to attend church and "on an occasion" to help his wife go shopping—the ALJ concluded that Balsamo was not "homebound" because he "owns and operates a motor vehicle when required." As in *Carroll*, where the claimant testified that he "sometimes read[ ], watch[ed] television, listen[ed] to the radio, [and rode] buses and subways," there is no evidence that Balsamo "engaged in any of these activities for sustained periods comparable to those required to hold a sedentary job." 705 F.2d at 643. We have stated on numerous occasions that "a claimant need not be an invalid to be found disabled" under the Social Security Act. *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir.1988) (quoting *Murdaugh*, 837 F.2d at 102 (claimant who "waters his landlady's garden, occasionally visits friends and is able to get on and off an examination table" nevertheless disabled because could not perform sedentary work)). Moreover, "[w]hen a disabled person gamely chooses to endure pain in order to pursue important goals," such as attending church and helping his wife on occasion go shopping for their family, "it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that

at 312–14, it is unclear whether this is so when a chiropractor such as Dr. Acquavella possesses a medical degree. We need not resolve this issue, however, both because Drs. Lee and Pal are

"treating physicians" within § 404.1527(d)(2), and because we do not in any event rely upon § 404.1527(d)(2) to support our holding.

he is capable of working." *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir.1989).

We conclude, therefore, that the Commissioner has failed to sustain her burden of establishing Balsamo's ability to perform sedentary work and that the ALJ's finding that Balsamo could so perform is not supported by substantial evidence.

## IV. *Disposition*

 There remains the question of whether we should direct that the case be (1) remanded for reconsideration by the Commissioner upon the existing record or upon a record to be amplified, or (2) remanded for calculation of benefits. Under 42 U.S.C. § 405(g) (" § 405(g)"),

> [t]he court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner [ ] for further action by the Commissioner [ ], and it may at any time order additional evidence to be taken before the Commissioner [ ], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....

This language, incorporated into the Social Security Act by amendment in 1980, "was at least in part designed to limit federal court remands to the [Commissioner]." *Carroll*, 705 F.2d at 644 (internal quotation marks and citations omitted). Where the reversal "is based solely on the [Commissioner's] failure to sustain [her] burden of adducing evidence of the claimant's capability of gainful employment and the [Commissioner's] finding that the claimant can engage in 'sedentary' work is not supported by substantial evidence, no purpose would be served by our remanding the case for rehearing unless the [Commissioner] could offer additional evidence." *Id.* Under § 405(g), moreover, the Commissioner plainly must establish "good cause for the failure to incorporate such evidence into the record in a prior proceeding" in order to justify the admission of new evidence. *See Simmons, II v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir.1992) (because Board failed to show good cause for remand for further proceedings, court reversed and remanded solely for purpose of calculating benefits); *Carroll*, 705 F.2d at 644 ("[A]bsent a showing by the [Commissioner] of good cause for a remand, the present case would be an appropriate one in which to carry out Congress' mandate to foreshorten the often painfully slow process by which disability determinations are made.").

Balsamo applied for disability benefits more than four years ago, a longer period than in *Carroll*. As in *Carroll*, "[a] remand, potentially followed by another appeal, could well delay the payment of benefits to which [the claimant] appears to be entitled for still further years." *Id.* Moreover, "on the record before us we cannot now determine whether the [Commissioner] would ask to reopen the record for the purpose of introducing additional evidence and, if so, whether [s]he would be able to meet the requirements of § 405(g), i.e. (1) that the evidence be (a) new and (b) material, and (2) that good cause be shown for [her] failure to produce the evidence in earlier proceedings." *Id.* Should the Commissioner request a remand to present new, material evidence, the application of the above standards would present "primarily factual issues [that] must be determined by the district court in the first instance." *Id.* (internal quotation marks and citation omitted).

As in *Carroll*, we therefore vacate the judgment of the district court with directions to remand the case to the Commissioner for the calculation of benefits, subject to the district court's disposition, according to the foregoing standards fixed by § 405(g), of any motion by the Commissioner for a remand to the ALJ for the consideration of additional evidence, provided the motion is made promptly upon our remand of the case to the district court.

## *Conclusion*

For the reasons set forth above, the district court's judgment is vacated and remanded with instructions to proceed in accordance with this opinion. The Commissioner

shall pay Balsamo's costs for his appeal to this court.