**Robin E. REYNOLDS, Plaintiff,**

v.

**Kenneth APFEL, Commissioner of the Social Security Administration, Defendant.**

No. 97–CV–6290L.

United States District Court,
W.D. New York.

April 15, 1998.

Andrew M. Rothstein, Elmira, NY, for Robin E. Reynolds, plaintiff.

Brian M. McCarthy, Asst. U.S. Atty., Rochester, NY, for defendant.

## ORDER

LARIMER, Chief Judge.

### INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff was not disabled, and therefore, was not entitled to disability benefits. This Court finds that the Commissioner's decision was not supported by substantial evidence and accordingly grants plaintiff's motion for summary judgment.

### PROCEDURAL BACKGROUND

Plaintiff Robin Reynolds ("Reynolds") was born on January 27, 1956 and is presently forty-two years old. (T. 121).[1] On June 23, 1993, Reynolds applied for Social Security disability and Supplemental Security Income ("SSI") benefits. (T. 121–32, 159–62). She claimed that she was unable to work since June 10, 1993 due to "lower back injury and long history of depression/mental instability." (T. 180). The Social Security Administration denied her applications initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge which was held on August 12, 1994.

On October 6, 1994, the judge issued a decision in which he found that plaintiff was not entitled to disability benefits. (T. 42–56). On August 4, 1995, Social Security's Appeals Council vacated the denial of benefits and remanded the matter for a further hearing. (T. 36–39). A second hearing was held before Administrative Law Judge Russell, ("ALJ") who issued a decision on July 18, 1996 and again denied benefits. (T. 12–26). On May 20, 1997, the Appeals Council notified plaintiff that it refused to review the ALJ's decision. (T. 5–7). The ALJ's decision thus became the Commissioner's final decision, and plaintiff commenced this action. Presently before the Court are the plaintiff's motion for summary judgment pursuant to Federal Rules of Civil Procedure 56, and defendant's motion for remand pursuant to the fourth sentence of 42 U.S.C. § 405(g).

### FACTUAL BACKGROUND

Reynolds has a long history of treatment for mental conditions. The record before the Court begins with an April 1, 1987 "Intake Evaluation" from Family Services of Chemung County which mentioned previous mental health treatments beginning at age nine. (T. 209–11). The report concluded with a diagnosis of adjustment disorder with depressed mood. (T. 211).

Reynolds underwent regular individual therapy visits to Family Services until December 1988. (T. 271). Between 1989 and 1991 Reynolds attended community college and worked as an English tutor. In January 1990, Reynolds renewed therapy at Family Services where therapists made an initial diagnosis of cyclothymia.[2] (T. 270–73).

On June 17, 1991, Reynolds was evaluated by Dr. Manzano at Family Services who gave a diagnostic impression which included possible major affective disorder, depressive type, possible dysthymic disorder, and a borderline personality disorder. (T. 275).

---

1. "T. ___" refers to the page of the transcript of the Administrative Record filed by the Commissioner with his Answer.

2. According to the *Diagnostic and Statistical Manual of Mental Disorders,* 363–66, American Psychiatric Association, 4th ed. (1997), "the essential feature of Cyclothymic Disorder is a chronic, fluctuating mood disturbance involving numerous periods of hypomanic symptoms ... and numerous periods of depressive symptoms."

In July 1991, Dr. Manzano completed an employment form in which he indicated that Reynolds would be unable to work due to cyclothymia. (T. 299). Additional reports of inability to work followed from both Dr. Manzano and Dr. Deines, who also worked at Family Services. (T. 300–03).

Despite these recommendations, Reynolds actually went to work as a customer service representative at Artistic Greetings in December 1992. (T. 174). Reynolds found that she had difficulty handling this employment and stopped working in June 1993, with a note from Dr. Deines which stated that "Robin is unable to work for the next month for medical reasons." (T. 301). In a report dated June 30, 1993, Dr. Deines indicated that due to cyclothymia, Reynolds was "not capable of working in any capacity at this time." (T. 302). A similar report from Family Services dated January 26, 1994 reported incapacity due to bipolar disorder and cyclothymia. (T. 303).

Reynolds continued to see Dr. Deines and a therapist over the next several months, but missed many of her scheduled appointments. (T. 229). On November 4, 1993, Reynolds was hospitalized at the Behavioral Sciences Unit ("BSU") of St. Joseph's hospital in Elmira, where she stayed until December 9. (T. 280–92). Dr. McGurk at BSU diagnosed Reynolds with bipolar disorder and a borderline personality disorder. (T. 313). In September 1994, Reynolds was again hospitalized at St Joseph's, where she stayed for three weeks and was diagnosed with bipolar disorder. (T. 314–18). In a discharge summary, Dr. Bezirganian described conversations in which they discussed Reynolds' unwillingness to work. (T. 315). Dr. Bezirganian told Reynolds that her condition was not severe enough to prevent her from working. *Id.* He concluded his report with a fair prognosis if she continued treatment, but poor to fair without treatment, "with likely continued poor function." *Id.*

In June of 1995, Reynolds was treated at the Coming Day Treatment Program of the Elmira Psychiatric Center. (T. 339, 345). In November 1995, a psychiatrist at that program noted a diagnosis of bipolar disorder and stated that Reynolds was not employable because she needed additional treatment for stabilization. (T. 342).

## DISCUSSION

### A. *The Standard of Review*

The issue to be determined by this Court is whether the ALJ's decision that plaintiff was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Bd.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)). Thus, the determination of the Commissioner is conclusive as long as it is supported by substantial evidence and is not based on legal error. *Arnone v. Bowen,* 882 F.2d 34, 37 (2d Cir.1989) (citations omitted).

### B. *The Standard for Finding a Disability*

A person is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

Plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). Once this burden has been met, "the burden shifts to the [Commis-

sioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the [plaintiff] could perform." *Id.; see also, Dumas v. Schweiker,* 712 F.2d 1545, 1551 (2d Cir.1983); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980).

In order to determine whether plaintiff suffers from a disability, the ALJ employs a five-step inquiry: (1) whether the plaintiff is currently working; (2) whether the plaintiff suffers from a severe impairment; (3) whether the impairment is listed in Appendix 1 of the relevant regulations; (4) whether the impairment prevents the plaintiff from continuing her past relevant work; and (5) whether there is other work which the plaintiff could perform. 20 C.F.R. § 404.1520; *Berry,* 675 F.2d at 467. If a claimant is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. § 404.1520(a); *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir.1992).

### C. *The Parties' Arguments and My Findings*

The Commissioner agrees with plaintiff that the ALJ's findings were not supported by substantial evidence but seeks a remand for a new hearing for additional fact-finding. The Commissioner noted that the ALJ failed to properly consider opinions of Reynolds' treating physicians. Plaintiff, on the other hand, argues that the medical evidence, including several opinions of treating physicians that Reynolds was unable to work, requires reversal of the ALJ's decision and a finding of disability.

■ A treating source's opinion of disability is entitled to some extra weight in claims for Social Security disability benefits. The Second Circuit Court of Appeals established the treating physician rule in a long series of cases, including *Schisler v. Bowen,* 851 F.2d 43, 47 (2d Cir.1988) (treating physician's opinion of disability binding unless contradicted by substantial evidence). However, the Commissioner promulgated new regulations in response to these holdings. Although these regulations altered the treating physician rule, the Second Circuit upheld the regulations' validity in *Schisler v. Sullivan,* 3

F.3d 563, 568—569 (2d Cir.1993). The present rule has been described in the following manner:

Under 20 C.F.R. § 404.1527(d)(2) ("§ 404.1527(d)(2)"), the medical conclusion of a "treating" physician is "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." The treating physician's opinion on the subject of medical disability, i.e., diagnosis and nature and degree of impairment, is: (i) binding on the fact-finder unless contradicted by substantial evidence; and (ii) entitled to some extra weight because the treating physician is usually more familiar with a claimant's medical condition than are other physicians.

*Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998), *citing Murdaugh v. Secretary of Dep't of Health and Human Servs.,* 837 F.2d 99, 101 (2d Cir.1988), *and Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986)).

In cases in which Social Security determines that a treating source opinion is not well-supported, the regulations require the ALJ to accord the physician's statements some extra weight based upon several factors. 20 C.F.R. § 404.1527(d)(2). The factors cited in the regulations include the length of the treatment relationship, the nature and extent of the relationship, the supportability of the source's opinion, the consistency with other medical evidence in the record, whether the opinion involves the speciality of the physician, and any other factors that might be relevant. *Id. See also, Gonzalez v. Callahan,* 1997 WL 279870 at *2 (S.D.N.Y.1997) (although Magistrate Judge erred by applying the Second Circuit's old treating physician rule in conjunction with the regulations, in the context of the case, there was no significant difference between that rule and the current regulations he should have applied.).

■ In this case, as in *Balsamo,* it does not matter whether the doctors' opinions that Reynolds could not work were accorded controlling weight or some extra weight under the regulatory scheme. *Balsamo,* 1998 WL 100544 at *6. Neither the Commissioner nor

the ALJ cited any medical opinion to dispute these medical opinions.[3] *Id.* Instead, the ALJ's decision relied heavily upon the record of Reynolds' treatments, which is rife with examples of missed appointments and failure to follow prescribed medication routines.

Yet the psychiatrists who reported that Reynolds was not employable were also the doctors who treated her on an ongoing basis. They reported that she had problems with treatment, but instead of concluding that Reynolds was "orchestrating her mental impairment in order to obtain supplemental security income benefits," as the ALJ did, (T. 20), the doctors apparently recognized a person with a long history of treatment for mental illness that affected her ability to cope with treatment.

■ In this case the ALJ ignored the treating physicians' opinions and concluded that Reynolds was not disabled based upon his own interpretation of the treatment record. As the Second Circuit noted, an ALJ is not free to substitute his own lay opinion for opinions from treating sources. *Balsamo*, 142 F.3d at 81, *See also, Pietrunti v. Director, Office of Workers' Compensation Programs*, 119 F.3d 1035, 1042 (2d Cir.1997), ("Moreover, an ALJ 'cannot arbitrarily substitute his own judgment for competent medical evidence,'" *quoting McBrayer v. Sec. of H.H.S.*, 712 F.2d 795, 799 (2d Cir.1983)).

Reynolds is entitled to reversal of the Commissioner's decision based upon the record before me. The evidence shows that Reynolds suffers from a severe mental impairment of long-duration which resulted in several weeks of inpatient psychiatric hospitalization. It also appears that Reynolds was again hospitalized after the second hearing, but evidence of that hospitalization was never made part of the record. Three doctors have expressed their opinion that Reynolds is unemployable, and the Commissioner has not demonstrated any substantial evidence to the contrary.

The Second Circuit remanded *Balsamo* for calculation of benefits, but invited the District Court to consider any motions for remand for factual development by the Commissioner. *Id.*, 1998 WL 100544 at \*7–8. *See, also Carroll v. Sec. of H.H.S.*, 705 F.2d 638, 644 (2d Cir.1983). In this case, I find that no purpose would be served by remand for any further development, and I remand the matter for immediate calculation of benefits. *See also, Schaal v. Apfel* 134 F.3d 496, 504 (2d Cir.1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand").

### CONCLUSION

The Commissioner's decision that Reynolds could still perform her past relevant work and therefore was not disabled was not supported by substantial evidence and is reversed. Defendant's motion is **DENIED.** Plaintiff's motion for summary judgment is **GRANTED,** and the case is remanded, pursuant to 42 U.S.C. § 405(g), for immediate calculation of benefits.

IT IS SO ORDERED.

---

3. The Commissioner's memorandum of law does point to Dr. Bezirganian's comments about Reynolds' ability to work as a reason why the Court should remand for further factual development. Yet these comments were not reported as the doctor's findings on discharge from her three week psychiatric inpatient stay. Instead, they were contained in a portion of the report titled "Hospital Course", and the challenge to Reynolds may have been part of the doctor's therapy. (T. 315).