Beverly **RIVERS**, Plaintiff–Appellant,

v.

Michael J. **ASTRUE**, Commissioner of Social Security, Defendant–Appellee.

No. 07–3104–cv.

United States Court of Appeals, Second Circuit.

May 28, 2008.

Mark Schneider, Plattsburgh, NY, for Plaintiff–Appellant.

Jennifer S. Rosa, Special Assistant U.S. Attorney (Glenn T. Suddaby, United States Attorney for the Northern District of New York, Barbara L. Spivak, Chief Counsel–Region II Office of the General Counsel, Social Security Administration, on the brief), Syracuse, NY, for Defendant–Appellee.

PRESENT: Hon. SONIA SOTOMAYOR, Hon. RICHARD C. WESLEY, Hon. J. CLIFFORD WALLACE,* Circuit Judges.

### SUMMARY ORDER

Plaintiff-appellant Beverly Rivers ("Rivers") appeals from a judgment of the United States District Court for the Northern District of New York (Victor E. Bianchini, Magistrate Judge), dated July 9, 2007, affirming a decision of Administrative Law Judge ("ALJ") Joseph F. Gibbons, dated October 19, 2005, which denied Rivers's application for supplemental social security income (SSI) and disability benefits (DIB). We assume the parties familiarity with the facts and the extensive procedural history of this case.

The ALJ's task in these proceedings was to determine whether Rivers had a "disability," *see* 42 U.S.C. § 423(d)(1)(A), and therefore eligible for social security benefits for two periods—from September 1, 1978 to September 16, 1984, and from May 1, 1989 to October 31, 1995.[1] "When deciding an appeal from a denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion." *Green–Younger v. Barnhart,* 335 F.3d 99, 105 (2d Cir.2003) (internal quotation marks omitted). We conduct a plena-

* The Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit sitting by designation.

1. Rivers filed an application for SSI on September 25, 1978. On October 17, 1984, she filed for SSI and DIB. Rivers was denied both applications.

ry review of the administrative record to determine whether, considering the record as a whole, substantial evidence supports the Commissioner's decision and the correct legal standards have been applied. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000).

As an initial matter, we note that Rivers does not contest the ALJ's determination that she was ineligible for DIB during the second period, from 1989 to 1995, because she failed to meet the insured status requirements at the time of her alleged onset of disability. Because Rivers did not apply for DIB for the first period, our review concerns only Rivers's eligibility for SSI.

■ Contrary to Rivers's allegations, the ALJ considered and credited the reports of Rivers's treating physicians in evaluating the severity of her symptoms. For the period from 1978 to 1984, the ALJ considered the notes of four treating physicians and observed that their examinations of Rivers revealed mostly normal results. For example, on November 17, 1982, Dr. Azar found no historical or clinical evidence of neurological disease and noted that Rivers's motor, coordination and sensory modalities were normal. On January 25, 1983, Dr. Cobus found no evidence of neurologic disease, and his only finding of abnormality was a restricted cervical range of motion. Dr. Nicknish diagnosed Rivers in 1977 with "decompensated low back type syndrome," and his later treatment notes reflect Rivers's complaints of pain, although his notes do not indicate that Rivers's syndrome was of such severity as to be disabling. Indeed, Dr. Nicknish repeatedly prescribed outpatient physical therapy and Motrin to treat Rivers's symptoms.

Similarly, the ALJ considered the evaluation of treating physicians for the period from 1989 to 1995. Rivers was diagnosed with diabetes in 1989, and she struggled to keep her insulin levels under control. Nevertheless, the record does not suggest that Rivers's diabetes resulted in severe physical limitations on her ability to work. In addition, although Rivers asserts that the ALJ ignored her physicians' conclusions that she suffered from fibromyalgia, the ALJ's opinion reflects otherwise. The ALJ recognized that Drs. Davis and Hazard diagnosed Rivers as likely having fibromyalgia in 1994 and 1995. While we recognize that fibromyalgia is "a disease that eludes [objective] measurement," *see Green–Younger*, 335 F.3d at 108, mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability, *see id.* at 104 (physician diagnosing fibromyalgia stated that the condition "in certain instances can be debilitating"). Unlike the claimant in *Green–Younger*—whose doctor diagnosed her fibromyalgia as "severe" and the cause of marked limitations in the claimant's activities of daily living, *id.* at 104—the record in this case contains no such finding. Indeed, Dr. Davis indicated that Rivers should continue her exercise regimen on the Nordic-Track and treadmill and consult with a physical therapist to treat her chronic lower back pain and fibromyalgia.

Nor was the ALJ required to credit Rivers's testimony about the severity of her pain and the functional limitations it caused. "Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings." *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir.1999).[2]

---

**2.** Although Rivers argues that the ALJ should not have made a credibility finding on remand, the remedial order in *Dixon* calls for a "full reopening" of cases and reevaluation pursuant to the five-step framework. This evaluation includes resolving any evidentiary conflicts and assessing the credibility of witnesses, including the claimant. *See Carroll v.*

Here, the ALJ found that Rivers's testimony was not credible, noting that clinical findings indicate only mild or slight symptoms and Rivers's work activities were not consistent with those of "an individual suffering from disabling pain." *See* SSR 96–7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements (1996) ("A report of negative findings from the application of medically acceptable clinical and laboratory diagnostic techniques is one of the many factors that appropriately are to be considered in the overall assessment of credibility.").

Rivers's allegation that the ALJ failed to consider her impairments in combination was raised for the first time on appeal, and arguably is waived. In any event, this allegation is not supported by the record. The ALJ opinion evaluates and discusses Rivers's ailments in combination, as did her treating physicians. Furthermore, the ALJ opinion recognizes that Rivers "suffered from severe musculoskeletal and endocrine impairments" during the relevant periods, but found that "said impairments failed to meet or equal the level of severity of any disabling condition contained in [the] Appendix." This conclusion suggests that, contrary to Rivers's assertion, the ALJ considered the cumulative effect of her impairments.

In sum, substantial evidence supports the ALJ's conclusion, based on the record as a whole and application of the correct legal standards, that Rivers did not suffer from a disabling condition of comparable severity to those listed in Appendix 1, Sub-part P of Part 404 of the Social Security Regulations.

Substantial evidence also supports the ALJ's conclusion that Rivers had the residual functional capacity ("RFC") to perform a full range of light work during the relevant periods. *See* 20 C.F.R. §§ 404.1545, 404.1567(b) (describing standard for RFC to perform "light work"). Rivers was employed as a bartender for much of the first period, and as a clerk at a newsstand and waitress for much of the second period. Although none of her work during these periods constitutes "past relevant work" because Rivers did not earn enough to meet the threshold for "substantial gainful activity," *see* 20 C.F.R. § 404.1560(b) (describing "past relevant work" by reference to periods of "substantial gainful activity"), Rivers met that threshold during 1988, when she was employed as a clerk at a newsstand [3] Because this position qualifies as "light work," substantial evidence supports the ALJ's conclusion that, during the relevant periods, Rivers did not qualify for benefits because she had the RFC to perform her past relevant work as a clerk.

For the foregoing reasons, we AFFIRM the district court's judgment.

---

*Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983). The district court thus did not abuse its discretion in this regard.

**3.** Rivers asserts that a substantial amount of her income in 1988 from New York State Disability, rather than earnings from her work as a clerk and a waitress, which could affect whether this period qualifies as past relevant work, Rivers was unable to introduce evidence to substantiate this assertion because the state agency destroys records after three years.