765 F.2d 145
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JOHN W. HENRY, PLAINTIFF-APPELLANT,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLEE.
 NO. 84-1451
 United States Court of Appeals, Sixth Circuit.
 5/16/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN
 BEFORE: WELLFORD and MILBURN, Circuit Judges; and KINNEARY, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, John W. Henry, brought this action in federal district court challenging the Secretary's denial of his application for Social Security disability benefits. Plaintiff filed for benefits on May 28, 1981. His application was initially denied, and he accordingly requested a hearing. Following a hearing, the Administrative Law Judge (ALJ) concluded that plaintiff was not disabled for purposes of the Social Security Act (the 'Act'), 42 U.S.C. Secs. 401-433. The district court found substantial evidence to support this finding, and this appeal ensued.
 
 
 2
 Plaintiff was born on November 1, 1940, making him approximately 44 years old. He possesses an eighth grade education. From 1957 through 1973 he was employed as a logging laborer, encompassing mainly heavy manual work. In 1973 he began working for National Motor Casting, originally being employed as a molder. Later he became a forklift driver, which job he retained until the onset of his claimed disability.
 
 
 3
 On January 9, 1979, plaintiff slipped at work while lifting 'castings.' He injured his back, requiring chiropractic treatment. Plaintiff continued working until May 15, 1979, at which time his back injury became so severe that he could no longer perform his job. At the time he ceased work, plaintiff was referred to the company doctor, Dr. James Sirajuddin. Dr. Sirajuddin first saw plaintiff on May 21, 1979, and diagnosed plaintiff as suffering from 'lumbo sacral disc disease.' He then referred plaintiff to Dr. E. S. Rhind.
 
 
 4
 Dr. Rhind examined plaintiff on July 17, 1979, and concluded:
 
 
 5
 There is paravertebral muscle spasm noted. Flexbility [sic] of the lumbar spine is abnormal with restriction of forward and lateral flexion . . .. Straight leg raising tests are equivocal on todays [sic] examination, but if anything would be more positive on the left.
 
 
 6
 Plaintiff was later referred by Dr. Sirajuddin to Dr. R. Harris Russo. In an examination taking place on November 5, 1980, Dr. Russo found that 'straight leg raising was positive to 20 degrees,' and there existed 'scarification of the L5 nerve root.' Dr. Russo recommended and performed exploratory surgery, which confirmed the existence of 'scar tissue' on the L5 nerve root. On June 24, 1981, Dr. Russo found that plaintiff possessed a 'moderate restriction of lumbar and sacral bending and tilting,' and found a 'persistent L5 root lesion.' In a letter dated January 19, 1981, Dr. Russo opined that plaintiff had a 'relatively serious problem' and stated that he could not 'release [plaintiff] to do any type of manual labor whatsoever.'
 
 
 7
 Plaintiff was examined by at least two other physicians, both of whom agreed with Dr. Russo's conclusions. Dr. K. R. Loewig, a radiologist, found that plaintiff had an 'obvious large defect . . . on the right side . . . which has the appearance of an epidural defect such as a herniated disc.' Further, he noted a possible 'nerve root herniation.' Dr. F. E. Erlandson conducted an orthopedic examination of plaintiff on July 2, 1981. He found no problem in the upper extremities of plaintiff's back, but found a 'marked spasm of the paravertebral musculature in the lumbosacral area with a resulting limitation of motion as indicated elsewhere.' As a result, Dr. Erlandson concluded that plaintiff could not return to his past work. Dr. Erlandson[1] stated:
 
 
 8
 The pain [plaintiff] describes is supported by clinical x-ray findings and would probably restrict him to a very light type of work in which he could stand or sit at will. Although the pain might limit even this type of work. Certainly he should be spared from any bending or lifting anything over ten pounds. His work would have to be on the ground level. Prognosis for improvement would be very poor.
 
 II.
 
 9
 The ALJ found that plaintiff was a 'younger individual' within the meaning of the regulations, who possessed an eighth grade, or 'limited,' education. See 20 C.F.R. Secs. 404.1563(b) and 404.1564(b)(3). Plaintiff was found to be able to perform only 'unskilled' work. See 20 C.F.R. Sec. 404.1568(a). His impairment was found to be 'severe' in nature, see 20 C.F.R. Sec. 404.1521, and prevented him from pursuing his past occupation. However, the ALJ also concluded that, based upon the medical evidence presented, plaintiff could perform work 'sedentary' in nature. See 20 C.F.R. Sec. 404.1567(a). Therefore, applying Rule 201.24, Table No. 1, Appendix 2, of 20 C.F.R. Part 404, plaintiff was found to be 'not disabled.'
 
 
 10
 The question in this case is only whether the ALJ's finding that plaintiff could engage in sedentary work is supported by substantial evidence. The ALJ recognized that plaintiff had made out a prima facie case of disability. Plaintiff clearly could not return to his past work. Accordingly, the burden of proof (going forward with the evidence) shifted to the Secretary to establish that plaintiff could still perform other substantial gainful work. See Richardson v. Heckler, 750 F.2d 506, 509 (6th Cir. 1984).
 
 
 11
 The ALJ concluded that plaintiff could perform sedentary work, based primarily upon the medical finding of Dr. Erlandson. 'Dr. Erlandson concluded . . . that the claimant could lift up to 10 pounds and was restricted to very light work which did involve a sit or stand option. He precluded bending as a limitation.' Further, the ALJ stated: 'The opinion of Dr. Russo in which he indicated the claimant could not be released to any manual labor does not appear to preclude work at the sedentary exertional level . . .. [Plaintiff's] residual functional capacity for sedentary work has not been precluded by the medical evidence of record.'[2]
 
 
 12
 From these conclusions it appears as if the ALJ was overly concerned with whether the medical evidence 'precluded' a finding that plaintiff could engage in sedentary work; rather than determining whether the medical evidence established that he could. Dr. Russo's report only states that plaintiff could definitely not engage in 'manual labor.' It does not state that plaintiff could engage in sedentary work. Thus, though Dr. Russo's report does not preclude the ALJ's finding, it does not establish it either. The inquiry at this stage of the analysis, where the claimant has put on a prima facie case, is whether there is substantial evidence tending to establish that the claimant can perform some gainful activity. This includes the finding that a claimant can engage in sedentary work. Our focus must therefore be on the evidence which establishes plaintiff's capacity to perform sedentary work.
 
 
 13
 The ALJ also summarizes the findings of Dr. John C. Hoyt, a physician with the Michigan Disability Determination Service, though not specifically relying on these findings in drawing his conclusions. Dr. Hoyt, a non-examining physician who merely reviewed the medical evidence, opined that plaintiff possessed a 'full range' of ability to perform exertional work, and could in fact perform 'light' work, defined as lifting 10 pounds frequently. Further, Dr. Hoyt concluded that plaintiff could sit, stand and walk for 6 to 8 hours per day, or more.
 
 
 14
 It is understandable why the ALJ does not specifically rely on Dr. Hoyt's report. The opinions of non-examining medical advisers 'deserve little weight in the overall evaluation of disability.' Landess v. Weinberger, 490 F.2d 1187, 1190 (8th Cir. 1974) ('The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant'). See also Ceglia v. Schweiker, 566 F. Supp. 118, 134 (E.D.N.Y. 1983) ('The law is clear that the opinion of a physician who has never treated or examined the claimant is entitled to little weight, and generally cannot serve as substantial evidence supporting a finding of nondisability . . .') (citing Allen v. Weinberger, 552 F.2d 781 (7th Cir. 1977); Browne v. Richardson, 468 F.2d 1003 (1st Cir. 1972)).
 
 
 15
 Aside from the medical evidence of record, the ALJ noted that plaintiff himself testified he could lift 10 pounds. At the hearing, the following colloquy took place:
 
 
 16
 Q [By ALJ] Have you ever had any restrictions placed on you as to how much weight you can handle, lift or carry?
 
 
 17
 A Yes. 10 pounds.
 
 Also:
 
 18
 Q [By plaintiff's counsel] Has [Dr. Russo] limited your lifting?
 
 
 19
 A Yes.
 
 
 20
 Q What did he tell you?
 
 
 21
 A 10 pounds.
 
 
 22
 Thus plaintiff did not testify that he could lift ten pounds; rather he testified that others had advised him against lifting more than ten pounds. Though this testimony might somewhat corroborate the report of Dr. Erlandson, it does not affirmatively establish that plaintiff could lift ten pounds.
 
 
 23
 The ALJ also found it significant that plaintiff took no pain medication and did not continue to treat with a physician. Plaintiff testified that he did not believe in taking drugs, though he did occasionally drink beer to settle his nerves. Plaintiff explained that he did not continue seeing a doctor because Dr. Russo told him there was nothing that could be done for him.
 
 
 24
 As a final matter, the ALJ discredited plaintiff's assertions of pain to the extent that he claimed extreme constant pain, even while sitting. The ALJ found that his observations of plaintiff while testifying revealed no evidence of pain. Plaintiff never 'fidget[ed],' nor did he 'change positions,' either of which might 'demonstrate . . . pain of sufficient intensity, persistence, or duration to preclude sedentary work activities.' Because the ALJ is not a doctor, this observation on his part is of 'limited weight.' Carroll v. Secretary of Health and Human Services, 705 F.2d 638, 643 (2d Cir. 1983) ('The ALJ's observation that [claimant] sat through the hearing without apparent pain, being that of a lay person, is entitled to but limited weight, . . .'.
 
 
 25
 In sum, there are three pieces of evidence to support the ALJ's findings. First, Dr. Erlandson found that plaintiff probably could lift ten pounds and engage in 'very light' work, although noting that even this might be limited by plaintiff's pain. Second, plaintiff related that he was told to lift no more than ten pounds. Finally, plaintiff takes no medication and no longer consults a physician, even though he claims to experience constant and severe pain.
 
 
 26
 Weighing against this evidence is plaintiff's own testimony concerning his disabling pain. His examining physicians all found severe problems with his lower back. Dr. Russo found plaintiff could engage in no manual labor whatsoever. All of the doctors agreed that the medical evidence supported plaintiff's claims of pain. None of these doctors, including Dr. Erlandson, questioned plaintiff's credibility.
 
 
 27
 In Carroll, 705 F.2d 638, a case factually similar to this one, the claimant presented 'overwhelming' evidence of the fact that he could not perform his previous occupation. The Secretary then, instead of coming forward with affirmative proof, rested on the evidence presented. In finding against the Secretary, the court noted which party had the burden of proof (the Secretary), and stated:
 
 
 28
 By its very nature 'sedentary' work requires a person to sit for long periods of time even though standing and walking are occasionally required. 20 C.F.R. Sec. 404.1567(a), (b) (1982). Three of the four doctors who examined Carroll . . . were never asked what work or activity, such as sedentary employment, Carroll could perform and hence expressed no opinion on that subject. However, Dr. Howard ertzberg, the treating physician who examined Carroll many times over a period of more than a year, expressed the opinion that Carroll had a limited ability to stand for any period of time, to sit for any period, to lift or to bend, and that he could sit, walk or stand for only 'short periods.'
 
 
 29
 * * *
 
 
 30
 * * *
 
 
 31
 Moreover he testified to various types of pain and limitations of movement that would have precluded his being capable of sedentary employment. His testimony regarding pain was also corroborated to some extent by the doctors who examined him, none of whom indicated any doubts about his credibility.
 
 
 32
 We find this case very much like that presented in Carroll. None of the examining physicians indicated that plaintiff could engage in work of a sedentary nature. At most, Dr. Erlandson's report suggests that plaintiff might be able to lift ten pounds. This, however, does not necessarily suggest that plaintiff can sit for extended periods. Plaintiff testified that his back pain prevented him from either sitting, standing, or walking for any length of time. The medical evidence fully supported plaintiff's claimed back pain, and not one of the doctors questioned plaintiff's credibility.
 
 
 33
 At this juncture, we are unable to say that substantial evidence supports the finding of the ALJ. At the same time, there exists little to no medical evidence suggesting that plaintiff is precluded from any and all activity. The evidence is ambiguous. For this reason, we REMAND this matter to the district court with instructions to remand to the Secretary for clarification of the medical evidence. In making this order, we are mindful of this court's holding in Willis v. Secretary of Health and Human Services, 727 F.d 551 (6th Cir. 1984). There the court held that remand is appropriate only where '(1) new material evidence is available and (2) good cause is shown for failure to incorporate such evidence into the prior proceeding.' Id. at 554; see 42 U.S.C. Sec. 405(g). The present case, however, does not involve the discovery of new evidence as discussed in Willis. Compare Fazio v. Heckler, 705 F.2d 541 (6th Cir. 1984). Instead, we REMAND only to clarify the existing medical evidence; that is, to specifically inquire of the examining physicians whether plaintiff might be able to perform work of a sedentary nature.
 
 
 
 *
 HONORABLE JOSEPH P. KINNEARY, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Plaintiff was also examined and treated by a Canadian physician, Dr. McCollough, in March 1980. Dr. McCollough performed a chymopapin injection, which though providing plaintiff with temporary relief, may in fact have exacerbated plaintiff's condition. Dr. Russo's report reflects this possibility
 
 
 [2]
 Sedentary work is defined as involving 'lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.' 20 C.F.R. Sec. 404.1567(a)