**Azaline DOYLE, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 99 CV 306(NG).**

United States District Court, E.D. New York.

July 13, 2000.

---

Eddy Pierre–Pierre, Charles E. Binder, Binder and Binder, New York, NY, for plaintiff.

Scott R. Dunn, Assistant U.S. Attorney, Loretta E. Lynch, U.S. Attorney, EDNY, Brooklyn, NY, Megan Siegel, for defendant.

## OPINION AND ORDER

GERSHON, District Judge.

Azaline Doyle seeks review of the decision of Administrative Law Judge (ALJ) Manuel Cofresi on March 11, 1997, adopted by the Appeals Council on November 23, 1998, that she is not entitled to Social Security disability insurance benefits from when she stopped working on November 6, 1995. The ALJ found that although Ms. Doyle suffered from a severe impairment that was traceable to her documented history of hypertension and heart problems, she nevertheless was able to perform sedentary work and specifically her previous work as a personnel manager or tax preparer. The Commissioner now requests a remand for further consideration by the ALJ, conceding error in the decision. Plaintiff moves for judgment on the pleadings and a remand for calculation of damages or, in the alternative, a remand for further proceedings. Both parties agree that the ALJ failed to properly eval-

uate the medical evidence and to apply the treating physician rule. Plaintiff also argues that the ALJ failed to evaluate her credibility properly. The parties' differences as to the appropriate remedy stem from divergent portrayals of the evidence of record before the Social Security Administration ("Administration"). The Commissioner asserts that there is ample evidence that would support a finding of lack of disability, while plaintiff maintains that the record could not support a finding against plaintiff, and therefore a remand for further consideration of the evidence is inappropriate.

**Facts**

Plaintiff was 47 years old at the time that she retired from her job with the New York City Board of Education on disability and applied to the Administration for disability payments. Plaintiff finished two years of college. Plaintiff worked for eleven years as a personnel manager with the Board of Education, and before that, had been a tax preparer, office manager and instructor with H & R Block for over a year. As a personnel manager, plaintiff supervised six people. She prepared reports, wrote memoranda, prepared job descriptions, conducted interviews, was responsible for hiring and termination decisions, investigated discrimination complaints and helped prepare the budget. (R. 56–58).[1] Plaintiff spent most of a typical day working in the office or attending meetings, and agreed that most of her job was sedentary. (R. 58).

Plaintiff testified that she felt compelled to stop working as a personnel manager because she continually felt tired, weak and dizzy, and suffered headaches. She found herself no longer able to remember or concentrate, and therefore could not perform her job adequately. (R. 42–43). Plaintiff also testified to exertional limitations. She tired easily, could not walk far (about 2 blocks), needed help carrying things, and experienced chest pressure and shortness of breath upon exertion. (R. 43–

50). As these symptoms persisted, plaintiff did not believe that she could return to work. (R. 50–51). Plaintiff estimated that she could stand for a total of one hour in a day (R. 48).

Plaintiff spent her days watching television, reading the mail, reading magazines and some books, talking on the telephone, taking naps, and preparing light meals. She usually lay on the sofa to watch television. (R. 64–67). She did occasional light cleaning and laundry. She went out to visit relatives or friends on infrequent occasions. Plaintiff and her husband went out to dinner once every two weeks; otherwise, they usually stayed at home. (R. 65–66). She was able to drive and sometimes took a bus. A few weeks before the hearing, plaintiff and her husband took a trip to Atlantic City for two days. Plaintiff testified that she spent about twenty minutes each day playing slot machines and the rest of the day in her hotel room watching TV and ordering from room service. (R. 60–61). As shown by hospital records, she also sometimes visited family in South Carolina, where she required emergency treatment on several occasions.

Plaintiff has been treated for over twenty years for high blood pressure, but her condition noticeably deteriorated starting around 1½ years before her retirement on disability. In June 1994, she was hospitalized for a week in South Carolina after she complained of headaches, chest pain and "generally feeling bad," and was found to have blood pressure of 224/130, which then went even higher to 250/140. Plaintiff was treated for "uncontrolled malignant hypertension" and discharged after her blood pressure had been brought under control. (R. 169–70). Since then, despite heavy medication, plaintiff's blood pressure has fluctuated widely. She has been examined often by doctors, gone to hospital emergency rooms, and several times has been admitted for hospitalization. Sometimes her blood pressure is within the normal

---

1. "R." refers to pages of the transcript of record filed by the Commissioner.

range, other times it is mildly elevated, and other times it is severely elevated. All medical evidence in the record is consistent with a finding of severe hypertension that cannot be fully controlled. Examination of the medical records reveals that plaintiff's contemporaneous descriptions of her symptoms when she sought treatment have been consistent, and those descriptions are consistent with her hearing testimony.

In October 1994, plaintiff was hospitalized at LaGuardia Hospital with acute chest pain. Based on the EKG and blood enzyme tests, hospital physicians and plaintiff's long-time (over 20 years) HIP treating physician, Dr. Shelly Wang, concluded that plaintiff had suffered an "acute myocardial infarction." Although there appears to be no medical dispute that plaintiff suffered an acute episode, and Dr. Wang has continued to characterize it as a myocardial infarction, a cardiac catheterization performed at North Shore University Hospital when plaintiff could be safely transferred was negative, as was a thallium stress test several months later. Cardiologists who have examined plaintiff have been unable to find a specific relationship between her symptoms and heart disease. However, I find no suggestion in the record from any doctor that plaintiff was malingering, and the Commissioner does not point to any such evidence. In fact, the ALJ concluded that her heart problems, as well as her hypertension, constituted a severe impairment.

Dr. Wang, plaintiff's long-term treating physician, reports that, because of plaintiff's severe uncontrolled malignant hypertension and chest pain associated with elevated blood pressure, plaintiff is very symptomatic and unable to work. These symptoms include headache, dizziness, chest pain, fatigue, weakness, drowsiness, inability to cope with stress, and shortness of breath on exertion. Dr. Wang submitted a disability report that plaintiff could stand and/or walk less than two hours a day, sit less than six hours, and had limited ability to lift, carry, push and pull. (R. 181–85). In a subsequent report, Dr. Wang estimated that plaintiff could sit for 2 hours, stand or walk for no more than one hour, occasionally lift up to five pounds, and should not engage in carrying, pushing or pulling, and had difficulty with low levels of stress (R. 195–96). Dr. Wang attributed plaintiff's condition to the side effects of her medications, which caused drowsiness and impaired concentration, as well as to her underlying medical condition. In a third report, Dr. Wang checked off less than two hours of walking or standing, about two hours of sitting, and reported that plaintiff would need to take 3 or 4 unscheduled rest breaks in a day if she attempted to work. (R. 221–24).

Dr. Wang submitted several statements opining that plaintiff is "unable to work" and "home bound". (R. 122, 194, 218). After the ALJ's decision, in a letter plaintiff submitted to the Appeals Council which was accepted as part of the administrative record, Dr. Wang stated that he had not meant to suggest that plaintiff was completely housebound at all times, but that plaintiff was "extremely symptomatic" and required bed rest during her frequent episodes of hypertension. Dr. Wang concluded that plaintiff should avoid work-related stress and, in his opinion, she could not adequately or safely "perform on a sustained basis in a regular job with normal stress and therefore is disabled." (R. 286).

Dr. Alan Binder, a board-certified cardiologist who, at the request of plaintiff's counsel (no relationship to the doctor), examined plaintiff and reviewed her records, found that plaintiff did not qualify for disability on the basis of cardiac disease, but that her uncontrolled hypertension and significant side effects from her medications "rendered her totally disabled from any gainful employment." (R. 219). Dr. Binder also felt that plaintiff could do "mild activities" on "a good day," but had marked difficulty on a "bad" one (R. 192–93). Other physicians who examined

plaintiff also found that she had hypertension that was difficult to control, despite many different combinations of medications. (Dr. Sinha, R. 123–24; Dr. Abu, R. 128–29; Medical University of South Carolina, R. 207–08).

Dr. A. Cacciarelli, the SSA consulting physician, whose specialization is not given, noted plaintiff's 29 year history of hypertension. After examination, he found that plaintiff was in no apparent distress and had full muscular power. His diagnosis was hypertension, stable angina, myocardial infarction, thyroid disease and cellulitis, and he "strongly advised" continuation of treatment. Dr. Cacciarelli's functional assessment is only the following: "At this time I estimate the patient would have a limited ability to push, pull or carry heavy objects or stand for long periods of time. This would all be limited by her above complaints." (R. 188). In describing those "complaints", Dr. Cacciarelli noted that the pain plaintiff described was "typical of stable angina at this time exacerbated by stress or exertion and relieved with rest" (R. 186), and that her prognosis is "only fair". (R. 188). Dr. Cacciarelli did not assess plaintiff's capacity to sit during an 8 hour day, nor did he state that he thought plaintiff could perform her previous job or any other normal job.

**ALJ Decision**

The ALJ concluded that despite plaintiff's severe impairments caused by hypertension and heart problems, she retained the capacity to perform her past work as a personnel manager and a tax preparer, and that her capacity for sedentary work was not significantly diminished by nonexertional limitations. The ALJ found that Dr. Wang was "overly pessimistic and restrictive, particularly in light of claimant's activities of daily living." (R. 22). The ALJ further found that plaintiff's complaints were not credible, as they were "inconsistent with the objective record" and her activities of daily living. (R. 23). The ALJ did not describe the medical

evidence which he asserted supported his rejection of the opinion of the treating physician and his disbelief in plaintiff's testimony. The ALJ did suggest that he found evidence in the record that plaintiff had not been fully cooperative with her physicians in taking prescribed medication. The ALJ also relied upon his observations of plaintiff at the hearing as alert, articulate, in no obvious pain, and acting appropriately. (R. 23).

**Discussion**

■ The Commissioner correctly recognizes that the ALJ's evaluation cannot be upheld. In plain contravention of the treating physician rule, the ALJ failed to set forth with specificity the medical evidence or other substantial evidence that he relied upon in rejecting Dr. Wang's evaluation of plaintiff as totally unable to work. *Snell v. Apfel,* 177 F.3d 128, 133–34 (2d Cir.1999); *Schaal v. Apfel,* 134 F.3d 496, 503–05 (2d Cir.1998). Furthermore, as the Commissioner concedes, the ALJ failed to consider Dr. Binder's evaluation, which supported Dr. Wang's opinion. Even though Dr. Binder was not plaintiff's treating physician, the ALJ should have considered that evidence and furnished an explanation of his decision to reject it. In addition, while the Commissioner does not concede this defect in the ALJ's analysis, plaintiff correctly points out that the ALJ failed to sufficiently explain the basis for his finding that plaintiff was not credible.

■ The Commissioner argues that this case should be remanded for further proceedings before the ALJ. The court is given the power by statute to remand for further proceedings or to reverse the decision and remand only for calculation of damages. 42 U.S.C. § 405(g). Although the remedy is a matter committed to the court's discretion, that discretion is constrained by caselaw that has analyzed the situations in which further proceedings on the merits are justified. *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir.2000) (where reversal is based on Commission-

er's failure to introduce sufficient evidence of the claimant's capability of gainful employment, "remand for the sole purpose of calculating an award of benefits is mandated"). The Commissioner does not ask for an opportunity to present new evidence. Instead, the Commissioner argues that there is sufficient evidence to support a finding that plaintiff was not "totally disabled," and, even though there may be sufficient evidence to support a contrary finding, the agency and not the court should weigh the conflicting evidence; therefore the ALJ should reconsider the matter in the first instance applying correct legal standards. Although I agree that this would be an appropriate situation for remand if the record contained conflicting evidence, remand is not appropriate under the facts of this case, and there is no just reason for further delay in awarding benefits to plaintiff on her 4½ year old claim. *Id.* I find no evidence in the record that could support a finding that plaintiff is not disabled, or at most the "mere scintilla" of evidence that is insufficient to sustain a finding for the Commissioner. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

■■■ The evidence relied upon by the ALJ could not support a finding that plaintiff is not disabled. The activities of daily living that he relied upon, such as reading, watching TV, doing light household work, going out to dinner periodically, and taking occasional trips, are not indicative of an ability to satisfactorily perform a job, much less plaintiff's previous job as a personnel manager. It is improper to reject the testimony of a treating physician based on consideration of such mundane activities, or for the ALJ to substitute his judgment for that of the treating physician as to the significance of a claimant's ability to perform such activities. *Balsamo v. Chater,* 142 F.3d 75, 81–82 (2d Cir.1998); *Carroll v. Secretary of Health and Human Servs.,* 705 F.2d 638, 643 (2d Cir.1983). A claimant is not required to be in a vegetative state before being deemed disabled for purposes of receiving benefits. Furthermore, although the ALJ is entitled to consider his observations of the claimant at the hearing and afford limited weight to those observations, *Schaal,* 134 F.3d at 502, the ALJ may not properly reject the medical testimony, particularly that of a treating physician, by using his own medical expertise based on his perceptions of the claimant. *Carroll,* 705 F.2d at 643. Moreover, the consequences of fluctuating hypertension are not subject to determination based on a layperson's observations for a limited time period on one occasion. The ALJ's assertion that plaintiff had not taken her medication as prescribed is not supported by the record. The hospital record cited by the ALJ for that proposition actually quotes plaintiff as stating that her physician had discontinued one medication several months earlier. (R. 178). Plaintiff testified that the hospital physician had misunderstood her, and that she actually said that the medication had been started several months earlier. (R. 71–72). Either way, the evidence does not support the ALJ's statement, and no physician has opined that the documented difficulty in controlling plaintiff's hypertension despite extensive use of different medications is attributable to plaintiff's neglect.

■■ Most critically, there is no competent medical evidence upon which to base rejection of the treating physician's opinions, which included that she was unable to work, and, expressly, that she did not have the capacity to engage in the kinds of activities required for sedentary work.[2]

2. Sedentary work, the least rigorous category of work recognized by SSA regulations, generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour day, lifting no more than ten pounds at a time and occasionally lifting or carrying articles like files and ledgers. *Rosa v. Callahan,* 168 F.3d 72, 78 n. 3 (2d Cir.1999). "By its very nature 'sedentary' work requires a person to sit for long periods of time even though standing and walking are occasionally required." *Id., quoting Carroll,* 705 F.2d at 643. Dr. Wang's functional capacity assessments concluded that plaintiff could not

The consulting physician, Dr. Cacciarelli, did not affirmatively find that plaintiff could perform her previous job or other sedentary work, and his findings are consistent with those of the treating physician. Although the ALJ is entitled to weigh conflicting medical opinions and evidence, the ALJ may not properly substitute his own evaluation for the medical evidence, or reject the conclusions of the treating physician without basing it on competent medical evidence. *Balsamo*, 142 F.3d at 80–81; *Filocomo v. Chater*, 944 F.Supp. 165, 170 (E.D.N.Y.1996).

The additional facts cited by the Commissioner in this proceeding in arguing for a remand are not probative of plaintiff's ability to return to work as a personnel manager with the stresses attendant to that position. The absence of certain heart or lung abnormalities was noted by examining physicians, who nevertheless determined that plaintiff had a serious medical condition and, in the opinion of both Dr. Wang and Dr. Binder, she was totally disabled because of her hypertension and the secondary effects of medication. Dr. Cacciarelli's report does not support a finding against plaintiff; his finding of limited ability by plaintiff to perform certain physical activities was unaccompanied by an opinion that she could hold her regular employment. In fact, he shared the concerns of the other doctors as to the seriousness of her condition and its chronic nature. The Commissioner's reference to plaintiff's supposedly "active lifestyle" is not borne out by the testimony or any other evidence in the record; indeed, plaintiff describes a lifestyle that is more accurately characterized as mainly inactive. The Commissioner's reference to

certain blood pressure readings is meaningless; the record as a whole shows that plaintiff's blood pressure fluctuated widely, consistent with the diagnosis of her treating physician.

### Conclusion

Given the more than 20 year relationship between plaintiff and her treating physician, and that physician's intimate familiarity with plaintiff's condition and its development over the years, the Commissioner would have to be able to point to a sound basis for denying the claim, and is unable to do so. Plaintiff's motion for judgment on the pleadings is granted, and the matter is remanded solely for calculation of benefits.[3]

**SO ORDERED.**

stand, walk or sit for these necessary periods of time and had a severely limited ability to perform other physical tasks that are part of sedentary work. See pp. 118–19 *supra*.

3. Counsel for the parties appeared for the scheduled oral argument and proposed a settlement providing that the matter would be remanded for further proceedings in which the ALJ would properly apply the treating physician rule. Since I was familiar with the record, I directed that argument go forward, reserving decision on the proposal. Having further considered the proposal, I have decided not to accept it in view of my conclusion that the evidence could not support a finding against plaintiff on remand and that there is no just reason for further delay.