Juan RODRIGUEZ (SS # 116–76–8015), Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. 01 CV 3036(NG).

United States District Court, E.D. New York.

March 11, 2003.

Wendy Brill, Esq., New York City, for plaintiff.

Claire Kadesfan, Asst. U.S. Atty., Brooklyn, NY, for defendant.

*MEMORANDUM AND ORDER*

GERSHON, District Judge.

Plaintiff Juan Rodriguez applied for Social Security disability insurance benefits on April 1, 1997. The application and subsequent request for reconsideration were denied. Mr. Rodriguez then requested a hearing, which was held on March 25, 1998, before Administrative Law Judge David Nisnewitz (the "ALJ"). By decision dated May 19, 1998, the ALJ affirmed the previous denial of benefits. Mr. Rodriguez then requested review by the Appeals Council. At this time Mr. Rodriguez advised the Appeals Council that he had returned to work as a parking attendant on December 22, 1998, and was seeking a closed period of benefits encompassing the period from October 21, 1996 to December 22, 1998. On March 9, 2001, the Appeals Council declined Mr. Rodriguez's request for review, and the decision of the ALJ became the final decision of the defendant Commissioner of Social Security, (the "Commissioner").

Mr. Rodriguez then commenced this action seeking reversal of the Commissioner's decision. On February 28, 2002, the Commissioner moved for remand on the ground that the record was not fully developed by either Mr. Rodriguez's counsel or the ALJ despite the ALJ's affirmative obligation to do so. The Commissioner also argues that remand is appropriate because the ALJ did not explain why he did not accept the opinions of the treating sources. On June 7, 2002, Mr. Rodriguez submitted his opposition to the Commissioner's motion and moved for reversal and remand solely for an award of benefits.

■ Pursuant to the Social Security Act (the "Act"), the findings of the Commissioner as to any fact, "if supported by substantial evidence, shall be conclusive." [1] Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[2] Thus, where the court finds that substantial evidence exists to support the Commissioner's determination, the decision will be upheld, even if contrary evidence exists.[3] This standard applies to findings of fact as well as to inferences and conclusions drawn from such facts.[4]

■ The court must also review the ALJ's decision to determine whether the ALJ applied the correct legal standard.[5] Where an error of law has been made that might have affected the disposition of the case, a court cannot fulfill its duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.[6] Thus, the court reviews *de novo* whether the correct legal principles were applied and whether the legal conclusions reached by the ALJ were based on those principles.[7]

In order to establish entitlement to benefits under the Act, a plaintiff must estab-

1.  42 U.S.C. § 405(g).

2.  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotations and citation omitted).

3.  *DeChirico v. Callahan,* 134 F.3d 1177, 1182 (2d Cir.1998) (decision affirmed where there was substantial evidence for both sides).

4.  *D'Amato v. Apfel,* 2001 WL 776945, at *3 (S.D.N.Y. July 10, 2001).

5.  *Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir. 1999).

6.  *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984).

7.  *See id.; see also Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987).

lish that he or she has a "disability." [8] The term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." [9] A claimant shall be determined to be under a disability only if the claimant's physical or mental impairment or impairments are of such severity that the claimant is not only unable to perform the claimant's previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists for the claimant, or whether the claimant would be hired if the claimant applied for work.[10] In making a determination by this process, the ALJ must consider four sources of evidence: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." [11]

In evaluating a claim of disability, the ALJ must follow the five-step procedure set out in the regulations governing the administration of Social Security benefits.[12] First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. If not, the second step requires the ALJ to consider whether the

claimant has a "severe impairment" that significantly limits his or her physical or mental ability to do basic work activities. If the claimant does suffer such an impairment, then the third step requires the ALJ to determine whether this impairment "meets or equals a listed impairment in Appendix 1" of the regulations. If the claimant's impairment meets or equals one of those listed, the claimant is presumed to be disabled "without considering the [claimant's] age, education, and work experience." If the presumption does not apply, then the fourth step requires the ALJ to determine whether the claimant is able to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing any other work.[13]

In this case, the ALJ, after proceeding through each of the steps listed above, determined that Mr. Rodriguez was not disabled. First, the ALJ noted, and it is not disputed, that as Mr. Rodriguez had worked as a light duty parking attendant through February 20, 1997, he had been engaged in a substantial gainful activity. Second, the ALJ concluded that the evidence established Mr. Rodriguez had suffered several severe impairments, including: "sprain whiplash of the cervical spine, sprain of the lumbosacral spine, head injury with signs of post-concussion syndrome and dysthymic disorder." Third, the ALJ found that, although Mr. Rodriguez has severe impairments, they do not meet or equal the criteria of any of the impair-

---

**8.** 42 U.S.C. § 423; *See Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir.1998).

**9.** 42 U.S.C. § 423(d)(1)(A).

**10.** 42 U.S.C. § 423(d)(2)(A).

**11.** *Brown v. Apfel,* 174 F.3d 59, 62 (2d Cir. 1999) (internal quotations and citation omitted).

**12.** *See* 20 C.F.R. § 404.1520; *Diaz v. Shalala,* 59 F.3d 307, 311 n. 2 (2d Cir.1995).

**13.** *See* 20 C.F.R. § 404.1520.

ments listed in Appendix 1, Subpart P, Regulations No. 4. Fourth, the ALJ found that Mr. Rodriguez's statements concerning his impairments and their impact on his ability to work are not credible as they are contradicted by medical findings, "particularly the findings of Dr. Hauskenect, the treating source, and the assessments of the medical expert and the medical consultant." Fifth, the ALJ concluded that Mr. Rodriguez's past relevant work as a parking attendant in a garage did not require the performance of work functions precluded by his medically determinable impairments, and therefore Mr. Rodriguez's impairments do not prevent him from performing past relevant work.

██ The record, however, not only does not contain substantial evidence in support of the ALJ's findings, it affirmatively belies those findings. All of Mr. Rodriguez's treating sources have concluded that he was disabled. None of the examining physicians, even the ones who served as consultants to the Commissioner, have made findings that contradict the conclusions of the treating sources. Indeed, the only doctor who did conclude that Mr. Rodriguez was not disabled was a non-examining doctor whose opinion is entitled to little weight.

While the ALJ refers to the reports of Dr. Aric Hauskenecht, a treating doctor, he misconstrues them. Dr. Hauskencht examined Mr. Rodriguez on four separate occasions. Dr. Hauskenecht initially prescribed only the use of certain rehabilitative aids and recommended that Mr. Rodriguez continue chiropractic treatment. However, in the report after his reevaluation of Mr. Rodriguez on Febru-

ary 20, 1997, Dr. Hauskenecht stated that Mr. Rodriguez's job was "defeating his recovery" and recommended that Mr. Rodriguez stop working until his symptoms improved. Additionally, in this report Dr. Hauskenecht stated that Mr. Rodriguez was completely disabled. On two subsequent examinations, Dr. Hauskenecht noted that Mr. Rodriguez's condition was essentially unchanged except that Mr. Rodriguez appeared to be suffering from psychological distress and stated that he might benefit from psychological treatment and evaluation. Also, the ALJ notes that Dr. Ronald Lambert, a chiropractor, in his letter of February 26, 1997, found that Mr Rodriguez was totally disabled, but fails to explain why he does not credit Dr. Lambert's report.[14]

The other physicians who actually examined Mr. Rodriguez did not offer conclusions as to his ability to work, nor did they contradict the findings of Dr. Hauskenecht. At Dr. Lambert's request, Dr. Sheldon P. Feit performed an MRI of Mr. Rodriguez's spine on November 4, 1996. In the report stemming from this exam, Dr. Feit found that Mr. Rodriguez was suffering from a "central herniation at C4–5 causing compression on the cervical spine" and "bulging disks at [the] C3–4, C45–6 and C6–7 levels." Dr. Apostolos Tambakis, the Commissioner's consultant, who examined Mr. Rodriguez on August 20, 1997, concluded that "the claimant has difficulty walking, standing, climbing stars, using public transportation, and is unable to bend continuos[ly,] or lift or carry objects heavier than seven to ten pounds." Further, Dr. Tambakis stated that he be-

---

14. While chiropractors are not "acceptable medical sources" under 20 C.F.R. § 404.1527(a)(2) whose opinions are given controlling weight, a chiropractor is listed as an "other source," 20 C.F.R. § 404.1527(a)(2) whose opinions may be given "significant weight" under the appropriate circumstances. *See Diaz v. Shalala,* 59 F.3d 307 (2d Cir. 1995).

lieved that Mr. Rodriguez was suffering from an underlying neurological pathology. Dr. Augusto Moreano, a psychiatric consultant to the Commissioner, examined Mr. Rodriguez on August 11, 1997, and diagnosed Mr. Rodriguez with dysthymic disorder.

The ALJ relies on the testimony of Dr. Afalonis, a medical expert who never examined Mr. Rodriguez. It was Dr. Afalonis's opinion, based solely upon a review of the record, that Mr. Rodriguez could sit for six hours, stand and walk four to six hours, occasionally lift and carry fifteen to twenty pounds and frequently lift and carry up to ten pounds. These findings are remarkable in that they are unsupported by the medical record and are in complete disagreement with the findings of a treating doctor's residual functional capacity report.[15] Even if Dr. Afalonis's testimony were supported by the record, which it clearly was not, I note that its value is severely limited because, in evaluating a claimant's disability, a non-examining physician's opinions are entitled to only limited weight.[16]

Dr. Hauskenecht examined Mr. Rodriguez, prescribed medication, ordered and examined an MRI scan, put him on a regimen of physical therapy, and recommended that Mr. Rodriguez cease working. It is undisputed that he was a treating source whose views are entitled to *special* deference.[17] Pursuant to the treating physician's rule, the opinions of Dr. Hauskenecht on the issues of the nature and severity of the impairments are given "controlling weight", so long as they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record.[18] Here, the opinions of the treating sources are supportive of each other and are not contradicted by other substantial evidence in the record. On the contrary, the findings of the examining consulting physicians are consistent with the conclusions of the treating sources. The testimony of Dr. Afalonis, the lone dissenting physician, who never examined Mr. Rodriguez, does not constitute substantial evidence to overcome the opinions of the treating physicians that he was disabled.[19]

The Appeals Council, in addition to having the benefit of the record as developed by the ALJ, agreed to receive new evidence in support of Mr. Rodriguez's claim. This evidence consists of the findings of two additional doctors who treated Mr. Rodriguez during the closed period for which he seeks benefits. Dr. Joseph Murray, a psychiatrist at New York Hospital's Payne Whitney Clinic, stated, in a letter dated May 15, 1998, that Mr. Rodriguez had been his patient since February of 1998, and, based on the severity of Mr. Rodriguez's depression and chronic anxiety, he was unable to work. Mr. Rodriguez also submitted the detailed report of Dr. Laura Downs, dated March 11, 1998, suggesting that Mr. Rodriguez should consider hospitalization for depression and poor temper control. Although this new

---

**15.** Record at 22. The residual functional capacity evaluation stated that claimant could, in an eight hour day, "sit for three hours, walk one to zero hours, lift less than ten pounds, bend occasionally, squat occasionally and climb occasionally. He could not carry up to ten pounds or crawl...."

**16.** *Cruz v. Sullivan,* 912 F.2d 8, 13 (2d Cir. 1990).

**17.** *See Diaz,* 59 F.3d 307; *see also Schisler v. Sullivan,* 3 F.3d 563 (2d Cir.1993).

**18.** 20 C.F.R. § 404.1527(d)(2).

**19.** *See, e.g., Garzona v. Apfel,* 1998 WL 643645 (E.D.N.Y.1998), *citing Hidalgo v. Bowen,* 822 F.2d 294, 297 (2d Cir.1987).

evidence directly contravenes the ALJ's findings, the Appeals Council, without comment, found that it did not provide a basis for overturning the ALJ's decision.

Both sides in this case seek remand. The court, after reviewing the decision of the Commissioner may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision with or without a remand for a rehearing. Further, the court may simply direct the Commissioner to award benefits. The decision to direct the Commissioner to award benefits should be made only when the administrative record in the case has been fully developed and when substantial evidence on the record as a whole indicates that a claimant is entitled to benefits. When faced with such a case, it is unreasonable for the court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in the receipt of benefits.[20]

▇ The Commissioner, citing both gaps in the evidentiary record and the ALJ's error in failing to explain why he did not accept the opinions of Mr. Rodriguez's treating sources, requests that this case be remanded for further development of the record. However, a remand is permissible under 42 U.S.C. § 405(g) only where there has been a "showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."[21] The burden rests upon the Commissioner to show good cause for a remand for further proceedings, and none has been shown.[22] The complaint that the signature of the doctor performing the residual capacity evalua-

tion is illegible is not a basis for remand. There is no real dispute that the doctor was a treating doctor, and, if the ALJ had doubts, he had a full opportunity to resolve them. Also, there has been no showing that any gaps in the record cited by the Commissioner could not have been filled during the initial proceeding. The ALJ is fully empowered by 42 U.S.C. § 405 to acquire any evidence he thinks is necessary, and he simply chose not to do so. In this case, the administrative record is well developed, and substantial evidence indicates that Mr. Rodriguez was disabled and is entitled to benefits. At this late date, and in the absence of a showing of new evidence satisfying the requirements of 42 U.S.C. 405(g), the remand requested by the Commissioner is not appropriate.

Accordingly, the motion of the Commissioner is denied, Mr. Rodriguez's motion is granted, and I reverse and remand the case to the Commissioner solely for the purpose of calculating benefits for the closed period from October 21, 1996 to December 22, 1998. The Clerk of the Court is directed to enter judgment for the plaintiff in accordance with this Order.

**SO ORDERED.**

**20.** *Balsamo v. Chater,* 142 F.3d 75 (2d Cir. 1998).

**21.** 42 U.S.C. § 405(g).

**22.** *Carroll v. Secretary of Health & Human Services,* 705 F.2d 638, 643–44 (2d Cir.1983).