Mercinth JOHNSON, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 02–CV–2359 (NG).

United States District Court,
E.D. New York.

June 26, 2003.

Charles E. Binder, Binder & Binder, New York City, for Plaintiff.

Paul Kaufman, U.S. Attorney's Office, Central Inslip, NY, Kimberly L. Schiro, U.S. Attorney's Office, Brooklyn, NY, for Defendant.

## OPINION AND ORDER

GERSHON, District Judge.

Plaintiff Mercinth Johnson applied for Social Security disability insurance benefits on January 29, 1997. Her application was denied on April 22, 1997. Plaintiff timely requested reconsideration of that determination. On December 10, 1997, that application was denied. Plaintiff thereafter requested a hearing to appeal that denial and on July 27, 1998, plaintiff appeared, represented by counsel, before Administrative Law Judge Manuel Cofresi ("ALJ"). Hearings were subsequently held before the ALJ on October 22, 1998, March 2, 1999, and April 23, 1999. By decision dated April 23, 1999, the ALJ denied plaintiff benefits based on a *de novo* review of the record. The Appeals Council denied plaintiff's request for review on February 27, 2002 and the ALJ's determination thereafter became a final decision of the defendant Commissioner. Pursuant to 42 U.S.C. § 405(g), plaintiff commenced this action on April 19, 2002. On December 20, 2002, the Commissioner moved for remand on the ground that, although the ALJ failed to fully develop the record in plaintiff's case, the record as developed does not compel a conclusion that plaintiff was disabled during the relevant period. On March 13, 2003, plaintiff submitted her opposition to the Commissioner's motion and moved for judgment on the pleadings and remand solely for an award of benefits. Oral argument was held before this court on April 29, 2003. At oral argument, plaintiff agreed to a disability onset date of May 28, 1998.

## Standard of Review

■ Pursuant to 42 U.S.C. § 405(g), the findings of the Commissioner as to any fact, "if supported by substantial evidence, shall be conclusive." Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Where a court finds that substantial evidence exists to support the agency's determination, the decision will be upheld, even where contrary evidence exists. *DeChirico v. Callahan,* 134 F.3d 1177, 1182 (2d Cir.1998) (affirming agency determination where substantial evidence existed for both sides). This standard applies to findings of fact as well as to inferences and conclusions drawn from such facts. *D'Amato v. Apfel,* 2001 WL 776945, at *3, 2001 U.S. Dist. LEXIS 9459, at *10 (S.D.N.Y.2001), *aff'd* 42 Fed.Appx. 415 (2002).

■ A district court reviews *de novo* whether the correct legal standard is applied and whether or not the ALJ's decision was based on the application of that standard. *Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir.1999); *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987); *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984). Therefore, where an error of law has been made that might affect the disposition of the case, a court cannot fulfill its duty by simply deferring to the factual findings of the ALJ.

■ In order to establish an entitlement to benefits under the Social Security Act, a claimant must establish that he or she has a disability as defined by 42 U.S.C. § 423. *Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir.1998). Thus, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be ex-pected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will be determined eligible for disability benefits only if his or her physical or mental impairment or impairments are of such severity that the claimant is not only unable to perform his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other kind of substantial gainful work existing in the national economy, regardless of whether such work exists in the immediate area in which claimant lives, or whether a specific job vacancy exists for the claimant, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 423(d)(2)(A). In making an eligibility determination, the ALJ must consider four sources of evidence: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Brown v. Apfel,* 174 F.3d 59, 62 (2d Cir.1999).

In evaluating an application for disability insurance, an ALJ must follow the five-step procedure for finding disability set forth in the agency regulations implementing the Social Security Act. 20 C.F.R. § 404.1520; *Diaz v. Shalala,* 59 F.3d 307, 311 n. 2 (2d Cir.1995). First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If not, the ALJ must determine whether the claimant has a "severe impairment" that significantly limits his or her ability to engage in basic work activities. If the claimant does suffer from such an impairment, the ALJ must determine whether this impairment "meets or equals a listed impairment" as contained in Appendix 1 of the regulations. If this third criteria is satisfied, the claimant is pre-

sumed to be disabled. If, however, the third criteria is not met, a presumption of disability does not arise, and the ALJ must determine whether or not the claimant is able to perform his or her past relevant work. If this fourth criteria is satisfied, the fifth step requires the ALJ to determine whether the claimant is capable of performing any other work. The claimant bears the initial burden of showing that her impairment prevents her from returning to her past relevant work. Once that burden is met, the burden shifts to the Commissioner to prove that the claimant is capable of performing any alternative substantial gainful work. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982).

## I. The ALJ's Decision

In this case, the ALJ, after proceeding through each of the required steps, determined that plaintiff was not disabled. First, the ALJ found that plaintiff has not engaged in any substantial gainful activity since March 1, 1996. Specifically, the ALJ found that plaintiff's brief employment as a book-keeper in May 1996 "constitutes an unsuccessful work attempt" pursuant to 20 C.F.R. § 404.1571. This finding is not disputed by plaintiff. Second, the ALJ concluded that the evidence established that plaintiff suffered from a severe impairment, epilepsy. Third, the ALJ found that plaintiff's impairment was severe within the meaning of the regulations but did not meet or medically equal one of the impairments listed in Appendix 1. This determination was in part based on the ALJ's finding that plaintiff had a pattern of non-compliance with her medication regimen. Fourth, the ALJ found that plaintiff retains the physical residual capacity to perform her past relevant work as a book-keeper and accounting clerk. In reaching this conclusion, the ALJ found that plaintiff had the residual functional capacity to lift and carry up to ten pounds, sit for up to six hours, stand and walk for up to two hours and that her non-exertional limitations precluded only driving an automotive vehicle and working at unprotected heights or in proximity to dangerous machinery. The ALJ further found that plaintiff's statements concerning her impairment "are not entirely credible in light of the degree of medical treatment required and the absence of extensive medical evidence." Specifically, the ALJ found that the record "does not support the frequency of seizure activity as reported by claimant." In reaching this conclusion, the ALJ noted that he did not give controlling weight to the opinion of plaintiff's treating physician, Dr. Gershon Ney of the Epilepsy Division of Long Island Jewish Medical Center, because of "substantial inconsistent evidence" contradicting that physician's opinion and that he accorded substantial weight to the testimony of the non-examining consulting physician who testified at plaintiff's hearing.

The ALJ's findings in this case are not supported by substantial evidence. In fact, as discussed in the sections that follow, the evidence affirmatively belies the ALJ's negative determination and compels a finding that plaintiff suffers from a listed impairment under the regulations.

## II. Plaintiff's Impairment

Plaintiff alleges disability beginning May 28, 1998 from epilepsy and the residual effects of her seizure disorder, which was first diagnosed in 1994. Plaintiff, who is 43 years old and a naturalized United States citizen, was formerly employed, for seven years, as an accounting clerk with a mortgage and finance company. She was laid off from that job because of frequent bouts of drowsiness (which plaintiff claims were a side effect of her medication) and memory loss. Her educational background includes one year of study at La-

Guardia Community College and one year of study at Pace University. Plaintiff's employment history includes sixteen years of nearly continuous employment, including three different sales and accounting positions. Plaintiff's last date of permanent employment was on or about March 1, 1996. She thereafter attempted to return to work as a part-time bookkeeper with a law firm. Plaintiff lost that job two months later because of her medical condition. Plaintiff then took a job as a taxi driver. Plaintiff was forced to leave that job after she suffered seizures while working, resulting in four vehicle accidents. Plaintiff's driver's license was suspended on February 20, 1997 because of her seizure disorder.

Plaintiff testified that she suffers from two types of seizures: grand mal, during which she loses both consciousness and bowel and urinary continence; and petit mal, which can causes lapses of consciousness that last for up to thirty minutes at a time. Plaintiff suffers from three types of petit mal seizures: a loss of ability to appropriately respond to environmental cues; lapses into gibberish accompanied by an inability to name familiar objects and people; and blackouts. Plaintiff reports severe memory loss as a result of her seizures. She testified that her grand mal seizures occur sometimes as frequently as once per month or as infrequently as three times per year. Plaintiff is generally hospitalized following each grand mal seizure, although she testified that she did not go to the hospital following a grand mal seizure in August of 1998. Plaintiff testified that her petit mal seizures occur as frequently as three times a day or as infrequently as three times per week.

Plaintiff currently takes three anti-convulsant medications for her epilepsy condition: Tegretol, Phenobarbitol, and Lamictal. Plaintiff testified that she is fully compliant with this medication regimen, although she also reported that she increased her dosage of Phenobarbitol at one point prior to consulting with her treating physician. Her January 12, 1998 application for benefits further indicated that, during the time that she was working, plaintiff stopped taking her medications because of negative side effects, including drowsiness and inability to concentrate. That same application also indicated that plaintiff had since resumed compliance. Plaintiff also suffers from diabetes and high blood pressure and takes insulin, Glucotrol, and Altase to control those conditions.

Plaintiff reports that she does not leave her home except to visit her cousin who lives next door and to attend medical appointments and an epilepsy support group at Long Island Jewish Hospital. Plaintiff does not take public transportation. She testified that she is able to do her own cooking and cleaning in her home. Plaintiff's January 12, 1998 application for benefits, however, indicated that plaintiff is no longer able to engage in yard work or vacuuming/sweeping because "hard work bring dizziness," that she is unable to shop for groceries or clothes, take care of her banking, pay her bills or use a checkbook because of memory loss, that she has some difficulty cooking because she has "blanked out on the stove," and that she has difficulty reading because of a "limited ability to concentrate for a long period of time." None of these detailed self-reports of disability were contested by the ALJ.

### III. Applicability of Listed Impairments to Plaintiff's Condition

Appendix 1 of the regulations lists the following criteria for disability as a result of non-convulsive epileptic seizures:

Minor motor seizures (petit mal, psychomotor, or focal), documented by EEG

and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least three months of prescribed treatment. 20 C.F.R. § 404, Subpt. P, App. 1, Sec. 11.03.

■■■ As indicated by every report by plaintiff's treating physicians, Dr. Samuel Akuoko of Laurelton Medical Center[1] and Dr. Gershon Ney of the Department of Neurology, Division of Epilepsy and EEG at Long Island Jewish Medical Center, plaintiff suffers from a seizure disorder which: a) has been documented by EEG and by detailed description of a typical seizure pattern; and b) occurs more frequently than once weekly. Dr. Akuoko's February 20, 1998 report indicated that plaintiff suffered frequent seizures. His July 16, 1998 report indicated seizures occurring ten times monthly. Dr. Ney's May 28, 1998 report indicated that plaintiff suffered minor motor seizures three to four times per week and convulsive (grand mal) seizures three to four times per year. His October 26, 1998 report indicated that plaintiff suffered five to ten seizure events per month. None of the consulting physicians who examined plaintiff (or, for that matter, who reviewed her record at the Commissioner's or ALJ's request) questioned the reported severity or frequency of plaintiff's seizures. In fact, Dr. Justin Willer, the consulting neuro-psychiatrist who testified at plaintiff's March 2, 1999 hearing before the ALJ, unequivocally testified that plaintiff suffered from more than one complex partial seizure a week.

Plaintiff's seizures have been documented in every manner required by the listing. Besides numerous hospitalizations for grand mal seizures and a suspension of driver's license because of her seizure disorder, plaintiff's seizures have been adequately documented by EEG and by detailed description. Specifically, Dr. Ney's August 1998 EEG results showed "moderately active to active spike abnormality" and one documented seizure. Dr. Akuoko's report of July 1998 provided a detailed description of plaintiff's post-seizure manifestations, including confusion, exhaustion, severe headache, muscle strain, paranoia, and tongue bites. Dr. Ney's July and October 1998 reports contain detailed descriptions of the frequency and duration of each of plaintiff's seizures, including problems with post-seizure memory loss. Moreover, no examining physician in the record questioned the veracity of plaintiff's description of her seizure activity. Even Dr. Willer, who did not examine plaintiff, testified that plaintiff's description of her seizures was "entirely consistent with complex partial seizures." Thus there is no basis in the record for the ALJ's finding that plaintiff's reports of the frequency and severity of her seizure activity were not credible.

The record also clearly establishes that plaintiff suffers from persistent seizure disorder "in spite of at least three months of prescribed treatment" as required by the regulations. While the record does contain significant evidence that plaintiff failed to comply with her medication regimen in the period prior to initiating treat-

---

1. The ALJ indicated in his report that he did not accord Dr. Akuoko status as a treating physician. The Commissioner continues to oppose consideration of Dr. Akuoko as such. No evidence in the record, however, supports the ALJ's or Commissioner's position. Dr. Akuoko's July 16, 1998 disability report indicated that he had been plaintiff's treating physician since October 1997. Plaintiff's medical records from St. Joseph's Hospital include an April 9, 1998 request from Dr. Akuoko for a copy of all of plaintiff's records for treatment purposes. In addition, plaintiff's May 28, 1998 initial assessment at Long Island Jewish Medical Center was cc'd to Dr. Akuoko.

ment with Dr. Ney in May 1998, it provides overwhelming evidence of compliance in the subsequent months. A report by Dr. Akouko dated July 16, 1998, specifically indicated that plaintiff was complaint with her medication and that her seizures persisted despite continued compliance. An October 28, 1998 report by Dr. Ney indicated that plaintiff was compliant with her medications and "continues to have seizures" in spite of that compliance. A March 3, 1999 letter by Dr. Ney specifically stated that plaintiff had been compliant with her medications since the onset of treatment in May 1998, the date upon which Dr. Ney issued his initial treatment report noting plaintiff's failure to take her medications as prescribed. No evidence in the record post-dating May 1998 in any way contradicts these reports by plaintiff's treating physicians.

■ Since the record as developed clearly establishes the persistence of plaintiff's documented seizure disorder in spite of prescribed treatment from May 1998 to the present, the ALJ's determination that plaintiff does not suffer from a listed impairment was in error. While the Commissioner in this case seeks remand to further develop the record of plaintiff's compliance, a remand for that purpose is not warranted. A remand is appropriate, pursuant to 42 U.S.C. § 405(g), only where there is new evidence which is material and good cause exists for the failure to incorporate such evidence into the record in the prior proceedings. Where the administrative record in a case has been fully developed and substantial evidence in the record as a whole indicates that a claimant is entitled to benefits, remand for further development of the record is not appropriate. *Balsamo v. Chater*, 142 F.3d 75 (2d Cir.1998); *Rodriguez v. Barnhart*, 249 F.Supp.2d 210, 215 (E.D.N.Y.2003). The burden rests upon the Commissioner to

show good cause for remand. *Carroll v. Secretary of Health & Human Services*, 705 F.2d 638, 643–644 (2d Cir.1983). Since none has been shown here, and the issue of plaintiff's compliance during the relevant time period is adequately supported by the record as developed, plaintiff is entitled to a remand solely for the purpose of calculating benefits.

## IV. Plaintiff's Ability to Engage in Past Relevant Work

■ Even assuming *arguendo* that the ALJ's finding that plaintiff did not meet the listing was supported by the record, no substantial evidence in the record supports the ALJ's finding that plaintiff was able to engage in her past relevant work as an accounting clerk and bookkeeper. Indeed, the evidence points inexorably in one direction, i.e., that plaintiff is disabled.

First, plaintiff's treating physicians repeatedly classified her as totally disabled as a result of her seizure disorder and provided detailed descriptions of her working limitations. Dr. Ney's July 10, 1998 report indicated that plaintiff suffered from "intractable and socially disabling seizures." Dr. Akuoko's July 16, 1998 Residual Functional Capacity questionnaire indicated that plaintiff suffered from both convulsive and non-convulsive seizures of a frequency of ten times per month with postitcal manifestations of confusion, exhaustion, severe headache, muscle strain, paranoia, and tongue bites. He further indicated that plaintiff suffered urinary and fecal incontinence during seizures, that her seizures were likely to disrupt co-workers, that plaintiff would need additional supervision due to her seizure disorder, that plaintiff's condition necessitated frequent ten to twenty minute breaks throughout the work day, that her impairment was likely to cause her to miss work more than three times per month, and that

plaintiff was "incapable of even 'low stress' jobs." In his October 26, 1998 report, Dr. Ney indicated that plaintiff was "fully disabled." The ALJ indicated that he did not accord these reports controlling weight on the grounds that: a) Dr. Akuoko was not a treating physician and b) Dr. Ney's reports that plaintiff was compliant with her medication regimen were contradicted by "substantial inconsistent evidence" in the record. Neither conclusion is supported by the record. As discussed previously, Dr. Akuoko's report of February 20, 1998, indicated that he began treating plaintiff in October 1997. An additional letter in the file indicates that Dr. Akuoko requested plaintiff's hospitalization records as her treating physician in April 1998. Dr. Ney's initial assessment of plaintiff in May 1998 was copied to Dr. Akuoko. Thus, there is no basis for the ALJ's conclusion that Dr. Akuoko's opinions that plaintiff suffered from a persistent seizure disorder that rendered her "incapable of even 'low-stress' jobs" should not be accorded controlling weight. Similarly, as detailed in the foregoing section, there is no evidence in the record in any form that contradicts Dr. Ney's report that, in the period following his initial treatment of plaintiff in May 1998, plaintiff was compliant with her medication regimen and nonetheless suffered debilitating seizures.

Second, the ALJ's finding that plaintiff was able to return to her past relevant work as an accountant and bookkeeper based on her functional capacity to meet the physical and cognitive requirements of those positions is unsupported by the record. The ALJ failed to take into account that plaintiff, who prior to the onset of her seizure disorder had a virtually uninterrupted sixteen year work history, was twice fired from bookkeeping and accounting positions because of her seizure disorder. Indeed, the ALJ himself found that plaintiff's March 1996 effort to return to work was a failed attempt because her physical condition rendered her incapable of meeting the functional requirements of a bookkeeping position. Plaintiff's testimony, and reports by both treating and consulting physicians, clearly establish that she cannot meet the physical or functional requirements of either position. Plaintiff testified that her medications weaken her concentration and cause drowsiness that significantly interferes with her ability to perform either job. She further reports that she cannot perform basic tasks of daily living, including traveling by public transportation, shopping for groceries or clothes, banking, balancing checkbooks, paying bills, and reading for pleasure. Her treating physicians have both indicated that plaintiff is totally disabled and cannot engage in her former employment. Three reports by consulting examiners indicate severe impairments in plaintiff's cognitive functioning as a result of her seizure disorder. Dr. Rochelle Sherman, a consulting psychologist who examined plaintiff on April 3, 1997, found that plaintiff, who prior to the onset of her seizure disorder completed two years of college level course-work, had an IQ of 79 and read on a fourth grade level. Dr. Arthur E. Farkash, a consulting neurologist who examine plaintiff on June 24, 1997, diagnosed plaintiff with a severe seizure disorder and noted significant short-term memory loss. Dr. William Barr, a consulting neuro-psychologist at the Neuropsychology Laboratory at Long Island Jewish Medical Center, examined plaintiff in a series of sessions on August 6, 12, and 20, 1997. Dr. Barr found that plaintiff had an IQ of 85, read on a fifth grade level, and had arithmetic skills on a sixth grade level as a result of her disorder. In the absence of any assessment contradicting the examining psychologists' and neurologist's reports of plaintiff's limited cognitive functioning,

the ALJ's determination that plaintiff has the functional residual capacity to perform past relevant work is unsupported by the record.

Finally, the record also clearly establishes that plaintiff does not retain the functional capacity to engage in any other substantial jobs in the national economy. Both of plaintiff's treating physicians have provided detailed reports indicating that she is not capable of engaging in work. Dr. Ney's July 10, 1998 report indicated that plaintiff suffered from "intractable and socially disabling seizures." Dr. Akuoko's detailed Residual Functional Capacity questionnaire dated July 16, 1998 indicated that plaintiff was "incapable of even 'low-stress' jobs." Dr. Ney's October 26, 1998 report stated that plaintiff was "fully disabled." No evidence in the record contradicts the conclusions reached by either treating physician.

Since the opinions of plaintiff's treating physicians are entitled to controlling weight absent inconsistent substantial evidence in the record, 20 C.F.R. § 404.1527(d)(2), the record in this case clearly establishes that plaintiff is neither capable of engaging in her past relevant work or in any other substantial gainful work in the national economy. "Where application of the correct legal standard could lead to only one conclusion," a district court is not required to remand a case to an administrative agency for further deliberation. *Schaal v. Apfel,* 134 F.3d 496, 504 (2d Cir.1998).

### Conclusion

The record in this case clearly establishes that plaintiff suffers from a persistent debilitating seizure disorder in spite of prescribed treatment pursuant to 20 C.F.R. § 404, Subpt. P, Appx. 1, Sec. 11.03. Alternatively, the record establishes that plaintiff does not retain the functional capacity to engage in either her past relevant work or any other substantial gainful work in the national economy. Since the Commissioner has failed to demonstrate that "there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding," 42 U.S.C. § 405(g), the Commissioner's motion for remand to further develop the record is denied. The administrative record was adequately developed in this case, and substantial evidence indicates that plaintiff is disabled and entitled to benefits. Accordingly, the motion of the Commissioner is denied, and plaintiff's motion for a remand solely for a calculation of benefits based on a disability onset date of May 28, 1998 is granted. The Clerk of Court is directed to enter judgment for the plaintiff in accordance with this Order.

**SO ORDERED.**